IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

**RODNEY SEVERSON**
3928 79th Street
Kenosha WI 53142

     Plaintiff,

v.

**S.C. JOHNSON & SON, INC.**
1525 Howe Street
Racine, WI 53403

     Defendant.

Case No.: 24-cv-1063

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

Plaintiff, Rodney Severson, through his attorneys, Hawks Quindel, S.C., by Aaron N. Halstead and Forrest C. Stewart, for his Complaint against Defendant, S.C. Johnson and Son, Inc., states and alleges as follows:

### NATURE OF ACTION

1. Plaintiff, Rodney Severson, brings this action under the Family and Medical Leave Act ("FMLA"), to seek redress for and relief from Defendant's unlawful employment practices under the Family and Medical Leave Act.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case involves federal questions under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

3.    Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 12117(a), 2000e-5(f)(3) because the acts or omissions giving rise to this claim adversely affected Plaintiff while he was working for Defendant and residing in the Eastern District of Wisconsin.

## PARTIES

4.    Plaintiff, Rodney Severson ("Mr. Severson" or "Plaintiff"), is an adult resident of the State of Wisconsin residing at 3928 79th Street, Kenosha, WI 53142.

5.    Defendant, S.C. Johnson & Son, Inc. ("S.C. Johnson" or "Defendant"), is a Wisconsin manufacturing company with its principal offices located at 1525 Howe Street, Racine, WI 53403.

6.    Defendant's registered agent for service of process in Wisconsin is Catherine N. Palin, 1525 Howe Street, Racine, WI 53403.

7.    Defendant is an "employer" engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 2611(4)(A)(i) and 29 C.F.R. § 825.104(a).

8.    Defendant employed fifty (50) or more employees for each working day during twenty (20) or more calendar workweeks in the year material to this action, as well as the year preceding it, pursuant to 29 U.S.C. § 2611(4)(A)(i).

9.    At all times material to this action Plaintiff was eligible for leave under the FMLA, having worked for Defendant for at least fifty-two (52) weeks, and having worked at least one thousand two hundred fifty (1250) hours, prior to the commencement of his leave. *See* 29 U.S.C. § 2611(2)(A)(ii).

2

## FACTUAL ALLEGATIONS

10. Mr. Severson began his employment with Defendant on or about October 30, 2006.

11. At all times relevant to this complaint, Defendant's attendance policy allowed employees to take no sick days without detriment to their employment.

12. Specifically, under this policy, every day an employee missed for being sick resulted in Defendant's application of two (2) "points" to his attendance record.

13. Defendant assessed progressive discipline against employees when they reached certain levels of points in a given 12-month period.

14. Specifically, a verbal warning was given when an employee reached eight (8) points, a written warning at ten (10) points, and the potential for termination absenteeism began at twelve (12) points or higher.

15. On or about February 21, 2023, Mr. Severson applied for intermittent FMLA leave in order to care for his mother, who was diagnosed with a physical or mental illness or injury that constituted a "serious health condition" within the meaning of the FMLA.

16. Defendant approved Mr. Severson's application for FMLA on or about March 13, 2023.

17. Defendant granted Mr. Severson six (6) full weeks of intermittent FMLA leave as part of that approval.

18. After his application for FMLA was approved, Mr. Severson began taking intermittent FMLA leave to care for his mother.

3

19. The processes Defendant developed and utilized for the administration of its FMLA program throughout Mr. Severson's tenure made it difficult or impossible for Defendant to accurately distinguish between employees' use of sick days for which they were subject to discipline and their protected FMLA absences.

20. Regardless of whether employees were taking an "unprotected" sick day or an FMLA absence, they were required to call in "sick" to the Waxdale Medical Center, located on Defendant's premises, before the start of the shift in question.

21. If a reporting employee was taking a non-FMLA "sick" day, Defendant instructed him to explain the nature of the sickness.

22. In or about late May 2023, Defendant began instructing employees to cease providing "FMLA" as a reason for their sickness when reporting an FMLA absence to Waxdale Medical Center, and, instead, to provide no reasoning whatsoever for such an absence.

23. Accordingly, upon information and belief, Waxdale Medical Center employees left the "reason" field blank for FMLA absences, which notation Defendant contemporaneously imported into its internal attendance system.

24. Thus, in the internal attendance system Defendant utilized and developed, records of protected FMLA absences and unprotected absences became indistinguishable for all purposes salient to this action.

25. In or about July 1, 2023, Defendant entered into a contract with a third party, the Prudential Insurance Company of America ("Prudential"), to administer its FMLA program.

4

26. During the transition from Defendant's to Prudential's administration of Defendant's FMLA program, Defendant and Prudential failed to assure that pre-existing claims were properly transferred to and recorded in Prudential's system.

27. Errors in the transition to Prudential's administration of the FMLA program led to various errors and omissions in accounting for employees' FMLA eligibility and usage, including the existence of multiple claim numbers for the same FMLA claim.

28. Defendant's contracting out of its statutory FMLA administration obligations led to confusing, inconsistent, and inaccurate accounting for and approving of FMLA leave.

29. Alongside the requirement that employees using FMLA leave report their absences to Waxdale Medical Center before the start of a shift for which they would be absent, Defendant also required that such employees report their FMLA leave to Prudential within five (5) days *after* a given absence.

30. There were several different methods by which employees were permitted to report FMLA absences to Prudential, including text messaging, a phone call to a Prudential representative, leaving a voicemail message, and the use of an online portal.

31. The existence of multiple permitted methods of reporting FMLA absences, combined with the fact that Defendant's outsourcing of its FMLA program to Prudential caused many employees to have multiple claim numbers, meant that

employees would often receive requests from Prudential for information about FMLA absences they had already reported.

32. In or about July 2023, both Prudential and Defendant notified Mr. Severson that there were "issues" with his FMLA paperwork.

33. In response to these notifications, Mr. Severson attempted to inquire about the nature of the alleged issues, but was unable to talk to anyone at Prudential because there was such an extensive backlog of individuals reporting issues related to Prudential's accounting of their absences from work.

34. Mr. Severson began calling Prudential multiple times weekly in an attempt to identify and rectify the alleged issues with his FMLA.

35. Finally, in September 2023, Mr. Severson was able to speak with someone at Prudential about the alleged issues with his FMLA paperwork.

36. Prudential informed Mr. Severson that Defendant had never sent Prudential Mr. Severson's FMLA paperwork or related documentation.

37. In order to remedy Defendant's error, Mr. Severson gave Prudential permission to communicate with his mother's doctor in order to verify Mr. Severson's need for FMLA leave.

38. In or around November 2023, Defendant attempted to discipline Mr. Severson in connection with his FMLA leave.

39. Specifically, Defendant claimed that Mr. Severson had failed to submit his initial FMLA paperwork to Prudential, despite the fact that Defendant had never communicated to him that he was required to do so.

40. Based on the erroneous claim, Defendant instructed Mr. Severson to sign a document admitting that he had in fact committed an error in failing to provide Prudential with his FMLA paperwork, and accepting discipline in the form of an unpaid day of work.

41. Mr. Severson refused to sign the document.

42. Around this same time, Mr. Severson spoke with Defendant's Human Resources Manager, Monica Bliss, who admitted to him that Defendant had "lost [Mr. Severson's] paperwork."

43. On or about January 14, 2024, Ms. Bliss terminated Mr. Severson's employment over the phone.

44. On January 16, 2024, Defendant sent Mr. Severson a letter, signed by Ms. Bliss, confirming his termination.

45. To justify its termination of Mr. Severson, Defendant cited "excessive absenteeism, providing false, dishonest, or misleading information in connection with a request for leave, and failure to follow the notification procedure for leave time."

46. None of Defendant's justifications for Mr. Severson's termination were based in fact.

47. To the contrary, Defendant's mismanagement of its FMLA program, including its use of Prudential in the administration thereof, was the sole reason for any apparent attendance or reporting issues in connection with Mr. Severson's FMLA leave.

7

48. Upon information and belief, Defendant failed to provide Prudential with adequate instructions on how to process and report its employees' FMLA absences.

49. Upon information and belief, Defendant did not automatically receive FMLA information from Prudential, and instead had to expressly request it from time to time.

50. Upon information and belief, Defendant requested such FMLA data from Prudential, at most, once every month.

51. Despite the onerous process the above-described circumstances created for employees requesting and using FMLA leave, including for reporting FMLA leave to both Defendant and Prudential, Mr. Severson reported every single instance of intermittent FMLA absences between March 2023 and January 2024.

52. Defendant terminated Mr. Severson because of his use of FMLA, and as a direct result of Defendant's failure to properly calculate Mr. Severson's attendance record.

### PLAINTIFF'S FIRST CAUSE OF ACTION: FMLA INTERFERENCE IN VIOLATION OF 29 U.S.C. § 2615(a)(1).

53. Mr. Severson re-alleges and incorporates herein by reference the above numbered paragraphs.

54. During the times material to this action, Mr. Severson was an employee eligible to receive approved medical leave under the FMLA.

55. Defendant was an employer obligated to provide FMLA leave to employees whose circumstances qualified them for FMLA leave.

8

56. Defendant approved Mr. Severson's requested FMLA leave for his mother's serious health condition.

57. Defendant's processes for employees' use and reporting of FMLA was convoluted, confusing, overly burdensome on employees, subject to error, and was likely to dissuade employees, including Mr. Severson, from utilizing FMLA leave.

58. Because of Defendant's faulty processes for managing its FMLA program, it threatened to discipline and, in fact, disciplined Mr. Severson and other employees for absences which were in fact protected under the FMLA.

59. Defendant disciplined Mr. Severson solely as the result of its own faulty FMLA processes and the resulting impact of same on its tracking of employee attendance.

60. At the time Mr. Severson was terminated, he still had approximately thirty-two (32) hours of available FMLA leave.

61. Defendant's actions and omissions interfered with Mr. Severson's rights under the FMLA.

62. As a direct and proximate result of Defendant's violation of 29 U.S.C. § 2615(a)(1), Mr. Severson has suffered economic damages, including his lost wages and other employment benefits, as well as interest he would have earned on all such compensation.

**PLAINTIFF'S SECOND CAUSE OF ACTION:**
**RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY UNDER THE**
**FMLA, IN VIOLATION OF 29 U.S.C. § 2615(a)(2).**

63. Mr. Severson re-alleges and incorporates by reference the above numbered paragraphs.

64. The FMLA prohibits an employer from discharging or in any manner discriminating against an individual because he engaged in an activity protected by the FMLA, 29 U.S.C. § 2615(a)(2).

65. An employer may not consider the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).

66. Mr. Severson engaged in protected activity by requesting and using approved medical leave under the FMLA.

67. Mr. Severson engaged in a protected activity by refusing to sign Defendant's discipline letter in November 2023, thereby opposing what he reasonably and in good faith believed to be an unlawful practice.

68. Mr. Severson suffered an adverse employment action when Defendant subsequently terminated him for absences which were protected under the FMLA.

69. By engaging in the conduct described above, Defendant willfully retaliated against Mr. Severson when it terminated him because of his use of FMLA leave.

10

70.   As a direct and proximate result of Defendant's violation of 29 U.S.C. § 2615(a)(2), Mr. Severson has suffered economic damages, including his lost wages and other employment benefits, as well as interest he would have earned on all such compensation.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff demands judgment against Defendant ordering:

A.   Damages equal to the amount of wages, salary, employment benefits, and other compensation Mr. Severson lost as a result of Defendant's unlawful conduct, together with interest thereon;

B.   Liquidated damages in an amount equal to Mr. Severson's pecuniary losses, based on the fact that Defendant was not acting in good faith when it violated Mr. Severson's FMLA rights;

C.   Mr. Severson's costs of this action, including his reasonable attorney's fees, litigation expenses; and

D.   Such other legal and equitable relief as this Court deems just and proper, including a declaration that Defendant violated the FMLA and reinstatement of Mr. Severson to the position in which he would now be employed but for the unlawful termination at a wage and benefit level he would presently enjoy but for that termination.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

11

Dated this 22nd day of August, 2024.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff, Rodney Severson*

By: *electronically signed by Aaron N. Halstead*
Attorney Aaron N. Halstead, SBN: 1001507
Email: ahalstead@hq-law.com
Attorney Forrest C. Stewart, SBN: 1124604
Email: fstewart@hq-law.com
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236