IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

RODNEY SEVERSON,

        Plaintiff,

vs.                                      CASE NO. 2:24-CV-1063-WED

S.C. JOHNSON & SON, INC.,

        Defendant.

**DEFENDANT S.C. JOHNSON & SON, INC.'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant S.C. Johnson & Son, Inc. ("SCJ" or the "Company"), by its attorneys Foley & Lardner LLP, respectfully submits this brief in support of its Motion for Summary Judgment ("Motion").

**INTRODUCTION**

Plaintiff Rodney Severson ("Plaintiff") filed suit against his former employer, S.C. Johnson & Son, Inc. alleging that SCJ interfered with Plaintiff's rights under the Family and Medical Leave Act ("FMLA") and retaliated against Plaintiff in violation of the FMLA. Plaintiff's claims are without merit and summary judgment should be granted in favor of SCJ on all counts of Plaintiff's Complaint.

With respect to Plaintiff's FMLA interference claim, it is undisputed that, during his employment with SCJ, Plaintiff repeatedly requested and was approved by SCJ to take FMLA leave in connection with his own health conditions and Plaintiff's mother's health condition. Plaintiff was approved for leave whenever Plaintiff (i) provided timely notice of a need for FMLA leave, (ii) complied with the Company's FMLA reporting and absence call-in procedures, and (iii) provided the applicable medical certification or recertification to support his request for FMLA leave. It is likewise undisputed that SCJ's third-party FMLA leave administrator, Prudential, only denied Plaintiff's request for FMLA leave with respect to certain absences in the fall and winter of 2023 after Plaintiff repeatedly failed to provide a medical certification to Prudential recertifying Plaintiff's need for continued leave in connection with Plaintiff's mother's health condition despite multiple requests from Prudential (over a three-month period) to do so. Further, although Plaintiff now claims that SCJ's transition of its FMLA leave administration to Prudential and SCJ's post-July 1, 2023 FMLA leave process were confusing, Plaintiff received multiple communications from SCJ and Prudential describing the process for

1

requesting leave and reporting FMLA-related absences.  Moreover, between October 12, 2023 and January 16, 2024, Plaintiff regularly contacted Prudential to report dates as FMLA leave. Consequently, because Plaintiff was not dissuaded from requesting or using FMLA leave and was granted all the leave to which he was entitled, SCJ is entitled to judgment as a matter of law on Plaintiff's FMLA interference claim.

Regarding Plaintiff's FMLA retaliation claim, it is undisputed that (i) Plaintiff was repeatedly absent from work during the period from August 2023 through January 2024, (ii) Prudential and SCJ gave Plaintiff ample opportunity to provide the medical certification needed for Prudential to approve, and SCJ to excuse, Plaintiff's absences during such period as FMLA leave; (iii) Plaintiff repeatedly failed to provide the medical certification requested by Prudential, (iv) SCJ terminated Plaintiff's employment after he continued to have unexcused absences while on a Decision Making Leave ("DML")[1] and after he accrued more than double the number of attendance points to warrant termination under SCJ's Attendance Guidelines, and (v) SCJ has terminated multiple other employees for excessive absenteeism in violation of the Company's policies.  Given these undisputed facts, Plaintiff cannot demonstrate that SCJ terminated his employment in retaliation for any protected activity under the FMLA.

---

[1] Under the Company's Positive Discipline Policy, a DML is considered the most serious level of discipline other than termination.  When an employee receives a DML, the employee is required to participate in a conversation with the employee's supervisor regarding the reason for the discipline, and is placed on an unpaid leave of absence to decide whether or not the employee is willing and able to meet the Company's work standards and expectations and continue working for the Company.  If an employee decides that he/she is willing and able to meet the Company's work standards and commits to improved performance, the employee typically creates an action plan detailing how they plan to improve their behavior/performance and comply with all policies and guidelines in the future.  If an employee is not willing to meet the Company's work standards and expectations, the employee's employment is terminated by the Company.  An employee is also subject to termination if the employee experiences another problem in any area (*e.g.*, attendance, job performance, misconduct, violation of work rules, safety violations, non-compliance with the action plan, etc.) within twelve (12) months of the DML or while a DML action plan is in effect.  (Facts ¶¶ 26-30)

Therefore, for these reasons and those discussed below, Plaintiff's claims are without merit and the Court should grant SCJ's Motion in its entirety and with an award of fees and costs, as appropriate, to SCJ.

<u>**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**</u>

SCJ hereby incorporates by reference its complete Statement of Proposed Material Facts in support of its Motion for Summary Judgment, which is filed contemporaneously herewith. Although SCJ disputes many of Plaintiff's allegations, for purposes of this Motion only, the material facts set forth in SCJ's Statement of Proposed Material Facts are undisputed by SCJ.

<u>**ARGUMENT**</u>

**I.      LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if all of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Brummett v. Sinclair Broad. Grp.*, 414 F.3d 686, 692 (7th Cir. 2005). A material fact is one that might affect the outcome of the action under governing law, and a genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bruner Corp. v. R.A. Bruner Co.*, 133 F.3d 491, 495 (7th Cir. 1998).

In deciding a motion for summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmovant's favor. *Brummett*, 414 F.3d at 692. However, if the nonmovant's evidence is "merely colorable," "not significantly probative," or merely raises "some metaphysical doubt as to the material

3

facts," summary judgment must be granted. *Anderson*, 477 U.S. at 249-52, 261 (scintilla of evidence in support of plaintiff's position insufficient; there must be evidence from which a jury could reasonably find in his favor); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). Courts need not be reluctant to grant summary judgment in appropriate cases since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323-24.

## II. PLAINTIFF'S FMLA INTERFERENCE CLAIM FAILS AS A MATTER OF LAW.

To succeed on an FMLA interference claim, Plaintiff must prove that: (1) Plaintiff was eligible for FMLA protection; (2) SCJ was covered by the FMLA; (3) Plaintiff was entitled to FMLA leave; (4) Plaintiff provided sufficient notice of his intent to take FMLA leave; and (5) SCJ interfered with, restrained, or denied Plaintiff the FMLA benefits to which he was entitled. *Myers v. Sunman-Dearborn Cmty. Schs.*, 142 F.4th 527, 533 (7th Cir. 2025). Ultimately, Plaintiff bears the burden of establishing any element of an FMLA cause of action, including one that goes to whether "he is entitled to the benefit that he claims." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000); *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 713 (7th Cir. 1997). Plaintiff cannot satisfy his burden here.

### A. Plaintiff Cannot Establish That SCJ Denied Him Any FMLA Benefit To Which He Was Entitled.

To begin with, Plaintiff cannot establish that SCJ denied him any FMLA benefit to which he was entitled. To the contrary, SCJ (and then later Prudential) approved Plaintiff's requests for FMLA leave for all dates in 2023 for which SCJ and/or Prudential had received a medical certification covering such dates – namely dates during the six-month period from February 9, 2023 through August 9, 2023 for which Plaintiff requested FMLA leave to care for his mother,

4

and dates during the March 8, 2023 through April 4, 2023 period for which Plaintiff requested FMLA leave in connection with his own migraines. (Defendant S.C. Johnson & Son, Inc.'s Statement of Proposed Material Facts (hereinafter, "Facts") ¶¶ 57, 61). Thus, Plaintiff cannot identify any absences during these periods for which Plaintiff was ultimately denied FMLA leave once he reported the absences to Prudential and provided an FMLA-related reason for the leave.[2]

In addition, the regulations interpreting the FMLA state that "[a]n employer may require that an employee's leave to care for the employee's covered family member with a serious health condition, or due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee or the employee's family member." 29 C.F.R. § 825.305(a). Once a certification is requested by the employer, "[i]t is the employee's responsibility either to furnish a complete and sufficient certification or to furnish the health care provider providing the certification with any necessary authorization form the employee or the employee's family member in order for the health care provider to release a complete and sufficient certification to the employer to support the employee's FMLA request." 29 C.F.R. § 825.305(d). Further, "an employer may request a recertification of a medical condition every six months in connection with an absence by the employee." 29 C.F.R. § 825.308(b).

---

[2] To the extent certain FMLA-leave related dates during the period from February 9, 2023 through August 9, 2023 were initially reflected on Plaintiff's October 12, 2023 DML, this was because Plaintiff did not initially report the absences to Prudential as required by SCJ's FMLA process. (Facts ¶¶ 63-66, 71-74). Such absences were later converted to excused absences after Plaintiff reported them to Prudential on October 12, 2023 and Prudential subsequently approved the absences as FMLA leave. (Facts ¶ 96).

5

Moreover, "even if [an initial] medical certification indicates that the employee will need intermittent or reduced schedule leave for a period in excess of six months (e.g., for a lifetime condition), the employer [is] permitted to request recertification every six months in connection with an absence." *Id.* "An employee must provide recertification within the time requested by the employer . . . or as soon as practicable under the particular facts and circumstances." 29 C.F.R. § 825.313(c). "If an employee fails to provide a recertification within a reasonable time under the particular facts and circumstances, then the employer may deny continuation of the FMLA leave protections until the employee produces a sufficient recertification." *Id.*; *see also*, 29 C.F.R. § 825.305(d); *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 768-69 (7th Cir. 2008). The regulations further state that "[i]f the employee never produces the recertification, the leave is not FMLA leave" and the employee is not entitled to FMLA protection for the absences. 29 C.F.R. § 825.313(b); *see also*, 29 C.F.R. § 825.305(d); *Ridings*, 537 F.3d at 768-69 (affirming summary judgment where employer terminated employee for failure to follow attendance policy when she did not submit FMLA medical certification forms); *King v. Ford Motor Co.*, 872 F.3d 833, 836, 841 (7th Cir. 2017) (summary judgment was proper where employee failed to provide proper medical certification).

Failure to provide a required medical certification to recertify a need for leave after the initial six-month period is exactly what happened in this case. Specifically, in February 2023, Plaintiff requested FMLA leave beginning on February 9, 2023 to care for his mother. (Facts ¶¶ 48, 51). SCJ notified Plaintiff that he was eligible for FMLA leave but was required to provide a completed certification of health care provider form to substantiate Plaintiff's need for leave. (Facts ¶ 49). SCJ also notified Plaintiff that, for chronic or intermittent conditions, he would be required to submit an initial certification form within 30 days of the first day of absence and then

6

submit a new form every six months thereafter if the condition persisted. (Facts ¶ 52). Plaintiff admitted that he received this notice from SCJ. (Facts ¶ 53).

In March 2023, Plaintiff provided SCJ with a completed certification of health care provider form dated March 13, 2023 substantiating Plaintiff's need for FMLA leave in connection with Plaintiff's mother's health condition. (Facts ¶¶ 54-55). The March 13, 2023 certification form indicated that Plaintiff's mother's condition began on February 3, 2023 and that Plaintiff's mother would need care on an intermittent basis beginning on March 2, 2023 and continuing through a date to be determined. (Facts ¶ 56). Upon receipt of the March 13, 2023 certification form, SCJ approved Plaintiff's use of intermittent FMLA leave to care for his mother for a period of six months from February 9, 2023 (the first date for which Plaintiff had requested leave) through August 9, 2023. (Facts ¶¶ 49-58).[3]

After the initial six months of approved intermittent FMLA leave, Plaintiff continued to be absent from work purportedly to care for his mother; however, Plaintiff did not initially report his absences to Prudential as required by SCJ's policies. (Facts ¶¶ 70-71). After Plaintiff did report his absences to Prudential (on October 12, 2023), on October 17, 2023, Prudential requested that Plaintiff provide a new medical certification for his ongoing absences after August 9, 2023 and advised Plaintiff that failure to submit the required certification could result in the delay or denial of his FMLA leave request. (Facts ¶¶ 76, 83). However, despite repeated requests from Prudential for this medical certification, Plaintiff never provided Prudential with a

---

[3] Plaintiff also requested and, upon receipt of a sufficient medical certification, was approved to take intermittent FMLA leave for his own health condition in connection with certain absences in March and April 2023 that he indicated were due to migraines. (Facts ¶¶ 60-61). All of the absences on dates listed in Plaintiff's medical certification for his own health condition were excused as FMLA leave and did not result in any discipline for Plaintiff. (Facts ¶ 61) As such, they do not support Plaintiff's FMLA interference claim.

medical certification recertifying Plaintiff's need for leave to care for his mother after August 9, 2023.[4] (Facts ¶¶ 84-95).

Ultimately, Prudential approved Plaintiff's FMLA leave requests for all of the absences that Plaintiff reported were FMLA-related and occurred on or before August 9, 2023. (Facts ¶ 96). Therefore, the only absences for which Plaintiff's employment was eventually terminated were absences for which Plaintiff failed to provide a medical certification recertifying his need for continued FMLA leave to care for his mother. (Facts ¶¶ 97-104). Because Plaintiff failed to provide a medical certification in response to Prudential's repeated requests, Plaintiff's absences after August 9, 2023 were not FMLA leave and Plaintiff was not entitled to FMLA protection for those absences. 29 C.F.R. § 825.313(b); *see also*, 29 C.F.R. § 825.305(d); *Ridings*, 537 F.3d at 768-69. Consequently, SCJ's assessment of attendance points for Plaintiff's unexcused absences during such period was entirely reasonable and permissible under the FMLA. Likewise, SCJ's decision to terminate Plaintiff's employment in reliance on the attendance points Plaintiff accumulated under Waxdale's Attendance Guidelines was also lawful. Therefore, SCJ is entitled to summary judgment on Plaintiff's FMLA interference claim.

### B. SCJ's FMLA Leave Process Did Not Deny, Interfere With, or Restrain Plaintiff From Using FMLA Leave.

Perhaps recognizing that there is no dispute that he failed to provide the requested medical certification and that he accumulated a sufficient number of attendance points to warrant discipline and termination under SCJ's policies, Plaintiff seeks to avoid the consequences of his actions (or inaction, as the case may be) by alleging that SCJ's FMLA leave process was

---

[4] Plaintiff provided only an incomplete certification form dated November 3, 2023 related to his father's health condition. Prudential subsequently notified Plaintiff that the incomplete medical certification form received by Prudential related to Plaintiff's father and that Prudential needed a medical certification form related to Plaintiff's mother. (Facts ¶¶ 84-88, 91)

8

"convoluted, confusing, overly burdensome on employees, subject to error, and was likely to dissuade employees, including [Plaintiff], from utilizing FMLA leave." (Compl. ¶ 57). Indeed, in his Complaint, Plaintiff makes much ado about SCJ's decision to engage a third-party vendor (Prudential) to manage its employees' FMLA leave requests and the alleged difficulties Plaintiff experienced following SCJ's transition of the FMLA leave process to Prudential on July 1, 2023. (Compl. ¶¶ 26, 27, 29, 30, 32-35, 39, 42). However, employers commonly rely on third-party vendors to manage FMLA leave; doing so and requiring employees to follow the vendor's call-in and certification requirements is not FMLA interference. *See Brown v. Chi. Transit Auth.*, No. 22 CV 675, 2025 WL 964540, at *13-*15 (N.D. Ill. Mar. 31, 2025) (granting summary judgment on interference claim where employer had a third-party vendor administer its leave policy and plaintiff failed to show that the vendor's certification requirements constituted interference); *Robey v. Weaver Popcorn Co.*, No. 16-CV-281, 2017 WL 4539914, at *3-*4 (N.D. Ind. Oct. 11, 2017) (employee could not defeat summary judgment motion as he could not show employer's third party vendor improperly denied his leave claim); *Shrock v. Drug Plastics & Glass Co.*, No. 17-CV-53, 2022 WL 1801144, *5-*7 (N.D. Ind. June 2, 2022) (employer prevailed on summary judgment motion where its third party administrator denied employee's FMLA claims because of incomplete medical certification); *Harris v. Chi. Transit Auth.*, No. 14 C 9106, 2019 WL 556708, *3-*4 (N.D. Ill. Feb. 12, 2019) (court granted summary judgment on interference claim where third-party administrator informed employee she was not eligible for additional leave).

Additionally, an employer's FMLA process does not become actionable merely because it is tedious and/or confusing. *See e.g.*, *Tarpley v. City Colleges of Chi.*, 752 F. App'x 336, 346 (7th Cir. 2018) (granting summary judgment on interference claim despite plaintiff's contention that the employer's "process for submitting FMLA paperwork as well as its change in accounting

9

FMLA accrual from a calendar year to a rolling calendar year caused her stress, created delays, and required resubmission of paperwork."); *Miner v. Petersen Health Care, Inc*., No. 13-CV-2035, 2014 WL 12572680, at *9 (C.D. Ill. Oct. 20, 2014) (granting motion for summary judgment despite employee's claim that employer's leave policies were confusing).  Instead, an employer's FMLA process may support an FMLA interference claim only if it is so "burdensome" that it "discourages employees from requesting FMLA leave" or "restrain[s] access without denying requests because few requests requiring a formal decision would ever be made."  *Ziccarelli v. Dart*, 35 F.4th 1079, 1086 (7th Cir. 2022).

Here, the undisputed evidence shows that SCJ's process did not discourage Plaintiff from requesting FMLA leave or otherwise restrain his access to FMLA leave.  Plaintiff repeatedly requested and was granted FMLA leave throughout his employment with SCJ – including for his mother's health condition and his own health conditions.  (Facts ¶¶ 57, 61, 96). Plaintiff was informed and reminded repeatedly by SCJ and Prudential about how to report absences and what he needed to do to obtain approval for FMLA leave.  (Facts ¶¶ 59, 64, 69, 77, 81, 83, 86-92, 99). After some initial delay by Plaintiff following Prudential's takeover on July 1, 2023, Plaintiff began reporting his absences to Prudential on October 12, 2023 and continued to regularly do so throughout December 2023.   (Facts ¶¶ 76, 93).   Additionally, as it relates to the medical recertification requirement relevant here,  Plaintiff was informed in writing, at the time of his initial request for leave to care for his mother, that he would need to renew the medical certification for his leave after the initial six-month period if his mother's condition persisted and he continued taking leave for her care.  (Facts ¶ 52-53). Plaintiff understood that he was required to submit a medical certification to qualify for FMLA leave, he knew how to obtain a medical certification from a health care provider, and he knew how to submit a medical certification to

SCJ and Prudential, as demonstrated by the medical certifications that he did submit to SCJ and Prudential. (Facts ¶¶ 52-54, 61, 84-85). Furthermore, Prudential contacted Plaintiff on multiple occasions and sent him multiple written letters between October 13, 2023 and December 20, 2023 regarding the need for Plaintiff to provide a medical certification relating to his ongoing absences to care for his mother. (Facts ¶¶ 82-82, 86, 89, 96). Despite these communications from Prudential and Plaintiff's knowledge regarding the medical certification process, it is undisputed that Plaintiff never submitted a medical certification to Prudential recertifying Plaintiff's need for leave to care for his mother after August 9, 2023. (Facts ¶¶ 93-94).

Further, given Plaintiff's numerous and regular reporting of his absences to Prudential throughout October, November, and December 2023, there is no evidence to suggest that Plaintiff would have taken more time off or requested more FMLA leave but for SCJ's FMLA process. Nor is there any evidence to suggest that the FMLA process restrained Plaintiff's access to FMLA leave. To the contrary, on October 12, 2023, when SCJ provided Plaintiff with the DML identifying his unexcused absences and directed Plaintiff to contact Prudential to report the absences to Prudential if he believed any of the absences were FMLA-qualifying, Plaintiff immediately contacted Prudential that same evening and reported that, in his view, all of his absences should have been covered by the FMLA. (Facts ¶¶ 73-76). Prudential promptly corresponded with Plaintiff on the issue that same day and subsequently approved several of the absences occurring during the period from February 9, 2023 through August 9, 2023 as FMLA-protected. (Facts ¶ 76, 96). For the reasons discussed above, Plaintiff's remaining unexcused absences were not FMLA-protected due to Plaintiff's persistent failure to provide a medical certification recertifying his need for additional leave after August 9, 2023 in connection with his mother's medical condition.

The Seventh Circuit previously addressed similar circumstances in *Tarpley v. City Colleges of Chicago*. In *Tarpley*, the plaintiff applied for and took intermittent FMLA leave in 2012 and 2013. When the plaintiff first began taking FMLA leave, the leave was handled by the plaintiff's college (Kennedy King College). Later, in early 2013, City Colleges of Chicago's human resources department decided "to centralize leave-of-absence administration at the main office, rather than at the individual colleges." *Tarpley*, 752 F. App'x at 340. At that same time, City Colleges of Chicago changed "the way it calculated FMLA leave from a calendar year basis to a rolling 12-month period." *Id.* "Also, sometime in mid-2013, FMLA requests were no longer sent to the Board of Trustees, which had previously generally approved them upon an administrator's recommendation without independently reviewing each request." *Id.* The plaintiff struggled with the changes. In June of 2013, while on leave, the plaintiff sent an email to human resources about the new FMLA system, stating:

> I am truly confused and not understanding what is happening. . . .
> The amount of stress caused by this process and the continual
> changes, requests for information I am not responsible for
> managing, and lack of response from my manager are only serving
> to exacerbate my condition. I am not responsible for managing my
> FMLA time, and it is not my error, nor should I face adverse
> consequences if you guys dropped the ball.

*Id.* at 342. The plaintiff sent a similar email to her supervisor a month later, stating: "Despite numerous attempts for clarification and communication, I have received no responses, which has [exacerbated] my condition . . . ." *Id.* at 344.

Despite the plaintiff's confusion and frustration with the new process, the district court denied the plaintiff's FMLA interference claim, and the Seventh Circuit affirmed, explaining:

> Tarpley contends that City Colleges' process for submitting FMLA
> paperwork as well as its change in accounting FMLA accrual from
> a calendar year to a rolling calendar caused her stress, created
> delays, and required resubmission of paperwork. Tarpley does not
> argue or cite to any evidence that she was treated differently from

12

other employees under these policies, that the policy change was directed at her, or that these policies in any way "interfered with or restrained [her] rights under [FMLA.]" *Goelzer v. Sheboygan County*, 604 F.3d 987, 996 (7th Cir. 2010). These policies were applicable to all City Colleges employees. Furthermore, as Tarpley and City Colleges stipulated, "Tarpley was granted all of the leave to which she was entitled under FMLA. Tarpley was never denied a request for time off when needed for documented medical reasons, even after she had run out of FMLA leave." JSUF ¶ 58. Therefore, the district court properly granted City Colleges' summary judgment motion on Tarpley's FMLA interference claim.

*Id.* at 346.

The same is true here. Plaintiff contends that Prudential's process for submitting FMLA paperwork and SCJ's transition of leave management to Prudential caused him confusion, created delays, and required resubmission of paperwork. But, as in *Tarpley*, there is no evidence that the process actually interfered with or restrained Plaintiff's FMLA rights, and there is no genuine dispute that SCJ granted Plaintiff all the leave to which he was entitled under the FMLA. Therefore, the Court should grant SCJ's Motion and dismiss Plaintiff's FMLA interference claim.

### III. PLAINTIFF'S FMLA RETALIATION CLAIM FAILS AS A MATTER OF LAW.

In addition to his interference claim, Plaintiff also claims that SCJ terminated his employment in retaliation for exercising rights under the FMLA. However, Plaintiff's factual basis for his retaliation claim is the same as the factual basis for his interference claim – namely that SCJ failed to properly account for Plaintiff's FMLA leave time, assessed Plaintiff attendance points for absences protected by the FMLA, and terminated Plaintiff's employment because of absences Plaintiff alleges should have been excused. (Compl. ¶¶ 56-58, 72). However, as discussed above, the only absences that remained unexcused by SCJ were absences that occurred after August 9, 2023 and for which Plaintiff failed to provide a supporting medical certification

13

recertifying Plaintiff's continuing need for leave to care for his mother. (Facts ¶¶ 96-102). Ultimately, the propriety of relying on these absences and assessing the related attendance points that led to Plaintiff's termination is the same for both of Plaintiff's FMLA claims. Consequently, if Plaintiff's interference claim fails (which it does), Plaintiff's retaliation claim must likewise fail. Thus, if Plaintiff cannot show that the assessment of the attendance points for his unexcused absences interfered with Plaintiff's FMLA rights, he certainly cannot show that the assessment of such attendance points constituted retaliation for exercising FMLA rights.

Moreover, under the burden-shifting analysis applicable to FMLA retaliation claims, Plaintiff cannot establish that SCJ's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Rice*, 209 F.3d at 1017 (quoting *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)). To do so, Plaintiff must demonstrate that (1) he engaged in an activity protected by the FMLA (e.g., requesting or taking leave); (2) he suffered an adverse employment action (e.g., disciplinary action, termination, demotion, reduction in pay, etc.) that would discourage a reasonable employee from exercising their FMLA rights; (3) there was a causal connection between the protected activity and the adverse employment action; and (4) SCJ's legitimate, nonretaliatory reason for the adverse employment action is pretextual and the true motivation of the action was retaliation. *Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1307 (7th Cir. 2022) (citing *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018); *Langenbach v. Wal-Mart Stores, Inc.*, 988 F. Supp. 2d 1004, 1017-19 (E.D. Wis. 2013), *aff'd*, 761 F.3d 792 (7th Cir. 2014). Here, there is no causal connection between Plaintiff's requests for, or use of, FMLA leave and Plaintiff's termination and Plaintiff cannot demonstrate that the legitimate, nonretaliatory reasons articulated by SCJ for his termination are pretextual.

14

With respect to the requirement that there be a causal connection between Plaintiff's protected activity (i.e., his use of FMLA leave) and his termination, Plaintiff can establish a causal connection either through a direct admission or "a convincing mosaic of circumstantial evidence," *Ridings,* 537 F.3d at 771, such as "suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Langenbach*, 988 F. Supp. 2d at 1019. That said, temporal proximity between the FMLA leave and the adverse action is not enough to withstand summary judgment, *Daugherty v. Wabash Ctr., Inc.,* 577 F.3d 747, 751 (7th Cir. 2009), and any inference of causation based on time becomes weaker as the time between the initial protected activity and the adverse action increases. *See Langenbach*, 988 F. Supp. 2d at 1019 (granting employer's motion for summary judgment where employee requested FMLA leave multiple times, most recently nine months before she was terminated); *Lewis v. Holsum of Fort Wayne, Inc.,* 278 F.3d 706, 711 (7th Cir. 2002) (holding a three-month gap between the initial protected activity and the adverse action is too long).

Here, Plaintiff has no evidence of a causal connection. For instance, Plaintiff does not allege that SCJ made any direct admissions regarding a retaliatory motivation nor is there any evidence of SCJ making ambiguous statements from which a retaliatory intent can be drawn. Likewise, Plaintiff does not (and cannot) claim that attendance points for unexcused absences were only assessed by SCJ to individuals requesting FMLA leave nor does Plaintiff claim that similarly-situated individuals who did not take FMLA leave were somehow treated more favorably than he was. And Plaintiff cannot even rely on temporal proximity between his use of leave and termination given that Plaintiff has repeatedly used FMLA leave on various dates

15

throughout his employment (e.g., in 2009, 2017, 2021, and between February 8, 2023 and August 8, 2023) and suffered no disciplinary consequences for doing so. (Facts ¶¶ 42-47, 57, 61, 96). Finally, because SCJ was entitled to assess points against Plaintiff and impose discipline for unexcused absences under the Company's Attendance Guidelines, terminating Plaintiff based on absences which were not FMLA-protected due Plaintiff's own failure to provide the medical certification requested by Prudential does not constitute FMLA-based retaliation. *See Ridings,* 537 F.3d at 770 (an employer may discipline or terminate an employee for absences for which the employee was not entitled to FMLA); *Matthys v. Wabash Nat'l*, 799 F. Supp. 2d 891, 907-08 (N.D. Ind. 2011) (granting summary judgment as employee could not show a causal connection between her FMLA request and termination where she had accumulated enough attendance points for termination); *Nelson v. Ingredion Inc.*, No. 21-cv-02680, 2023 WL 5627974, at *9 (S.D. Ind. Aug. 31, 2023) (employee could not defeat motion for summary judgment where accumulation of attendance points unrelated to FMLA justified suspension).

### B. Plaintiff Cannot Prove That The Legitimate, Non-Retaliatory Reasons Articulated By SCJ For His Termination Are Pretextual.

Finally, Plaintiff cannot prove that SCJ's articulated nondiscriminatory reason for his termination – namely his accumulation of too many attendance points under the Waxdale Attendance Policy – is pretextual and is not the real reason for his termination. SCJ terminated Plaintiff's employment based on his excessive absenteeism and accumulation of more than 16 attendance points in violation of the Attendance Guidelines and after he had already received a DML related to his attendance. (Facts ¶¶ 103-104). The undisputed evidence shows that, after accounting for the absences approved by SCJ and Prudential as FMLA-protected, as of October 12, 2023, Plaintiff still had a sufficient number of unexcused absences and had accumulated well over the 14 attendance points needed to subject him to a DML under SCJ's Attendance

16

Guidelines. (Facts ¶ 75). Likewise, it is undisputed that, as of January 16, 2024, Plaintiff had numerous additional unexcused absences while on a DML and had accumulated well over the 16 attendance points warranting termination under the Attendance Guidelines. (Facts ¶ 101). Further, although Plaintiff's termination was based on his excessive unexcused absences, (Facts ¶¶ 103-104), the undisputed evidence also shows that Plaintiff gave conflicting reasons for certain absences, (Facts ¶¶ 103, 105), and failed to follow SCJ's call-in and notification procedures for FMLA-related absences despite his awareness of such procedures, thereby providing SCJ with additional support for the termination decision. (Facts ¶¶ 105).

In the face of these undisputed facts, Plaintiff has no evidence, other than his own feelings and assumptions about SCJ's motivation for its actions (which notably do not point to an FMLA-related motive), (Facts ¶¶ 107-109), to support his claim of retaliation. However, "[m]ere speculation, conjecture, and conclusory allegations are insufficient to defeat a summary judgment motion." *Johnson v. Franklin Twp. Cmty. Sch. Corp.,* No. 19-cv-02479, 2021 WL 5505536, at *3 (S.D. Ind. Nov. 24, 2021) (citing *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021)). Accordingly, the Court should grant SCJ's Motion and dismiss Plaintiff's FMLA retaliation claim.

## CONCLUSION

For all of the foregoing reasons, SCJ respectfully requests that the Court enter an order granting it summary judgment on all of Plaintiff's claims and dismissing this action with prejudice and with costs and fees awarded to SCJ.

17

Dated: December 10, 2025.

/s/ Carmen N. Decot

Carmen N. Decot, WI Bar # 1054862
John R. FitzGerald, WI Bar # 1120150
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone:  414-297-5568 (CND)
Telephone:  414-297-5079 (JRF)
Facsimile:  414-297-4900
Email:  cdecot@foley.com
Email:  jfitzgerald@foley.com

*Attorneys for Defendant S.C. Johnson & Son, Inc.*