RODNEY SEVERSON,

        Plaintiff,

vs.

                                       CASE NO. 2:24-CV-1063

S.C. JOHNSON & SON, INC.,

        Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF RODNEY SEVERSON'S STATEMENT OF PROPOSED MATERIAL FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil L.R. 56(b)(3), Defendant S.C. Johnson & Son, Inc. ("SCJ") hereby submits the following response to Plaintiff's Statement of Proposed Material Facts:

### SEVERSON'S ELIGIBILITY FOR AND USE OF FMLA

1. S.C. Johnson & Son, Inc. ("SCJ") is an "employer" engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 2611(4)(A)(i) and 29 C.F.R. § 825.104(a). (Compl. ¶ 7; Answer ¶ 7).

**RESPONSE**: **Undisputed.**[1]

2. In both 2022 and 2023, SCJ employed fifty (50) or more employees for each working day during twenty (20) or more calendar workweeks of each year. (Compl. ¶ 8; Answer ¶ 8).

---

[1] Proposed facts that are undisputed in this response are undisputed by SCJ for purposes of SCJ's motion for summary judgment only. SCJ reserves the right to contest any fact in the event that any portion of this case proceeds to trial.

**RESPONSE**: **Undisputed.**

3. At all times between Severson's request for FMLA leave in February 2023 and Severson's termination from SCJ in January 2024, Severson was eligible for leave under the FMLA, having worked for SCJ for at least fifty-two (52) weeks, and having worked at least one thousand two hundred fifty (1250) hours, prior to the commencement of his leave. (Compl. ¶ 9; Answer ¶ 9).

**RESPONSE**: **Undisputed.**

4. In 2022, on an occasion prior to the events giving rise to this dispute, SCJ calculated that Severson had accrued seventy-four (74) absence points due to absences related to a serious health condition. (Declaration of Forrest C. Stewart ("Stewart Dec.") Ex. C, (Deposition of Rodney Severson (Severson Dep.), Ex. 8); Dkt. # 25-1 at 45:25-46:4).

**RESPONSE**: **Disputed in part.** SCJ does not dispute that, as of February 16, 2022, Severson had accrued 74 attendance points; however, SCJ does dispute that Severson had accrued such points due to absences for a reason that qualified as a "serious health condition" within the meaning of the FMLA, or due to absences that had been timely and properly reported as potential FMLA-leave qualifying absences in accordance with SCJ's usual and customary notice requirements and substantiated by an appropriate medical certification as the evidence cited by Severson does not establish such facts. To the contrary, the February 16, 2022 Decision Making Leave memo cited by Severson explicitly states, "We do not have any records of you substantiating any FMLA related absences through the Leave Team and Prudential for any of the dates listed above." (Stewart Dec., Ex. C, (Severson Dep.), Ex. 8; Decot Dec., Ex. A (Severson Dep.) at 46:18-22)

5. When SCJ contacted Severson regarding these absences on February 16, 2022, it provided Severson with nine (9) days to gather documentation to support that those dates were covered by FMLA. (Stewart Dec., Ex. C, (Severson Dep., Ex. 8), Dkt. # 25-1 at 46:23-47:2).

**RESPONSE**: **Undisputed.**

6. In response to SCJ's February 16, 2022 correspondence, Severson provided the required documentation and the absences in question were approved without Severson facing discipline. (Dkt. # 25-1 at 46:10-11, 48:4-6, 49:4-7, 50:1-13).

**RESPONSE**: **Undisputed.**

7. Prior to Prudential taking over administration of SCJ's FMLA leave program, Severson often reported his absences to SCJ's Medical Center regardless of whether they were for his own health condition or that of his mother. (Severson Dec., ¶ 3).

**RESPONSE**: **Undisputed.**

8. In approximately half the calls he made to SCJ's Medical Center, Severson was not able to reach a human operator, and instead had to report his absence to an automated robot, and was only able to report himself as "sick" regardless of the reason for the absence. (Severson Dec., ¶ 4-7).

**RESPONSE**: **Undisputed but immaterial.** If Severson was calling to report an FMLA-related absence, in addition to calling in to SCJ's Medical Center, he was also required to notify SCJ's Leave Team (pre-July 1, 2023) or Prudential (July 1, 2023 and after) regarding his need for FMLA leave and could provide additional information regarding the reason for leave to the Leave Team or Prudential.

9. Severson does not specifically recall the cause of his six (6) absences on February 24 and 27, and April 7, 10, 11, and 17, 2023. (Severson Dec., ¶ 11).

3

**RESPONSE**:  **Undisputed, but irrelevant and immaterial.**  What Severson now recalls about the reasons for the referenced absences is immaterial; what is relevant and material is what Severson communicated to SCJ and Prudential regarding the reasons for such absences. Specifically, on March 30, 2023, Severson informed Monica Bliss that his absences on February 24 and 27, 2023 were for Severson's own health condition (migraines).  (Pl's Fact Resp. ¶¶ 59-60)  Severson's absences on February 24 and 27, 2023, were not initially approved as FMLA leave because they were not dates covered by the April 19, 2023 Certification of Health Care Provider for Employee's Serious Health Condition form provided by Severson to SCJ.  (Pl's Fact Resp. ¶ 62)  Severson did not initially indicate that his absences on April 7, 10, 11, or 17, 2023 were FMLA-related, despite being prompted by Bliss on May 24, 2023, to report any FMLA-related absences to the Leave Team.  (Pl's Fact Resp. ¶¶ 63, 66)  Several months later, on October 12, 2023, after being issued a DML, Severson reported these absences to Prudential as FMLA leave related to care of his mother.  (Pl's Fact Resp. ¶¶ 72, 76)

10.     Severson acknowledges that it is possible those absences were indeed originally reported as being for his own health rather than for care of his mother. (Severson Dec., ¶ 12).

**RESPONSE**:  **Undisputed.**

11.     If those absences originally were for his own health, his reporting such absences as FMLA-protected to Prudential in October 2023 – six (6) months after they were incurred – was an honest mistake that he would have remedied had anyone from SCJ or Prudential ever reached out to him about the apparent discrepancy. (Severson Dec., ¶ 12-14).

**RESPONSE**:  **Undisputed, but irrelevant and immaterial.**  What Severson now claims that he would have done if explicitly questioned by SCJ about his contradictory statements and his changing reasons for leave on certain dates is immaterial; what is relevant and material is

4911-9606-5168.3

what Severson actually communicated to SCJ and Prudential regarding the reasons for such absences and that SCJ honestly believed that Severson had been dishonest when making such contradictory statements regarding the reason for such absences. (Pl's Fact Resp. ¶¶ 79-80) *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 575 (7th Cir. 2015) (employer's honest believe that employee had been dishonest was not pretext for retaliation); *see also*, *Darst v. Interstate Bands Corp.*, 512 F.3d 903, 910 (7th Cir. 2008) (affirming summary judgment on retaliation claim where the employer "believed [the FMLA certification] was inaccurate; they believed that the Certification overstated the time period that [the employee] was in treatment"); *Scruggs v. Carrier Corp.*, 688 F.3d 821, (7th Cir. 2012) ("[Defendant] held an 'honest suspicion' that [Plaintiff] was misusing his FMLA leave at the time it made the decision to terminate him.

12. In 2023, in addition to the notice and approvals for Severson's FMLA claims regarding his mother's and his own health condition, on or about November 3, 2023, Severson submitted FMLA recertification paperwork listing his father as the family member for whom he sought leave to care for. (Dkt. # 25-1 at 125:3-128:3; Dkt. # 025-32 at 2-7).

**RESPONSE**: **Undisputed, but irrelevant and immaterial.** It is undisputed that Severson's absences during the period from August 8, 2023 through January 12, 2024 were related to care for his mother, not his father. It is further undisputed that, on October 17, 2023, Prudential sent Severson a letter instructing him to provide a completed copy of the Care of a Family Member Medical Certification enclosed with the letter by November 16, 2023, and that, between October 17, 2023 and date his employment was terminated, Severson did not provide a complete medical certification form certifying a need for leave to care for his mother. (Pl's Fact Resp. ¶¶ 83, 94, 98)

4911-9606-5168.3

13.     Severson intended to submit his November 3, 2023 recertification paperwork for his mother, but believes he inadvertently wrote his father's name on the paperwork due to the similarities in their conditions, as well as the fact that they shared a doctor. (Severson Dec., ¶ 20-22).

**RESPONSE**:  **Undisputed, but irrelevant and immaterial.**  What Severson now claims that he intended to submit with respect to recertification paperwork is immaterial; what is relevant and material is what medical recertification documentation Severson actually provided to Prudential.  It is undisputed that Severson's absences during the period from August 8, 2023 through January 12, 2024 were related to care for his mother and it is further undisputed that, between October 17, 2023 and date his employment was terminated, Severson did not provide a complete medical certification form certifying a need for leave to care for his mother after being asked by Prudential to do so.  (Pl's Fact Resp. ¶¶ 83, 94, 98)

14.     Throughout 2023, Severson texted his supervisor, Timothy Corrigan, to report his absences, and further provided details about the reasoning for his absences. ("Stewart Dec., Ex. A (Deposition of Timothy Corrigan ("Corrigan Dep.) at 52:5-7; Severson Dec., ¶ 27, Ex. A).

**RESPONSE**:  **Undisputed.**

15.     Monica Bliss was aware that Severson texted Corrigan about his absences. (Dkt. # 25-25 at 63:20-64:5, Dkt. # 25-26 at 2).

**RESPONSE**:  **Undisputed in part; disputed in part.**  SCJ does not dispute that Bliss was aware that Severson had texted Corrigan about Severson's absences on June 28 – June 30, July 6, and July 10.  The evidence cited by Severson does not establish that Bliss was aware that Severson texted Corrigan about his absences on any other dates.

4911-9606-5168.3

<u>**SEVERSON'S ACTIVITY AT THE OCTOBER 2023 TOWN HALL**</u>

16.     In or around October 2023, SCJ hosted a town hall meeting to discuss company communication. (Dkt. # 25-1 at 131:4-132:24).

**RESPONSE**:  **Undisputed in part; disputed in part, but irrelevant and immaterial.** SCJ does not dispute that, in October 2023, SCJ hosted a town hall meeting.  However, SCJ does dispute that such October 2023 town hall meeting included discussion of any Company communication systems other than a newly implemented technology platform called Redzone. (Supplemental Declaration of Kristina White-Hill ("White-Hill Supp. Dec.") ¶ 7; (Stewart Dec. Ex. A, Corrigan Dep. at 105:5-107:7)  Moreover, the testimony cited by Severson does not indicate that Burton or Corrigan's alleged actions were in response to any concerns raised by Severson about FMLA-related systems of either SCJ or Prudential, an inability to access any FMLA-related systems, or SCJ or Prudential's administration of the FMLA process. Additionally, prior to Severson's termination of employment, neither Kristina White-Hill nor Monica Bliss (who participated in the termination decision) had any knowledge of Severson voicing such concerns during the October 2023 town hall meeting.  (White-Hill Supp. Dec. ¶ 8; Declaration of Monica Bliss ("Bliss Dec.") ¶ 35)

17.     At the town hall meeting, Severson voiced concerns about limitations and issues in SCJ's technology and communication systems, particularly as they related to an employee's ability to access payroll and email. (Dkt. # 25-1 at 131:12-18; 134:19-135:13).

**RESPONSE**:  **Disputed and irrelevant and immaterial.**  During the October 2023 town hall meeting, Severson asked questions about the new Redzone technology platform for measuring product in and product out on the production lines.  The Redzone technology was not related at all to SCJ's or Prudential's FMLA process/program.  (Stewart Dec. Ex. A, Corrigan Dep. at 105:5-107:7)  Moreover, the testimony cited by Severson does not indicate that Burton or

7

Corrigan's alleged actions were in response to any concerns raised by Severson about FMLA-related systems of either SCJ or Prudential, an inability to access any FMLA-related systems, or SCJ or Prudential's administration of the FMLA process. Additionally, prior to Severson's termination of employment, neither Kristina White-Hill nor Monica Bliss (who participated in the termination decision) had any knowledge of Severson voicing such concerns during the October 2023 town hall meeting. (White-Hill Supp. Dec. ¶ 8; Bliss Dec. ¶ 35)

18.     Severson raised his concerns in a public matter, in front of every single employee at the Waxdale facility. (Dkt. # 25-1 at 137:5-15).

**RESPONSE**:     **Disputed and irrelevant and immaterial.**   The testimony cited by Severson does not indicate that Burton or Corrigan's alleged actions were in response to any concerns raised by Severson about FMLA-related systems of either SCJ or Prudential, an inability to access any FMLA-related systems, or SCJ or Prudential's administration of the FMLA process.  Likewise, the testimony cited by Severson does not establish that Severson raised concerns in front of every single employee at the Waxdale facility.  Additionally, prior to Severson's termination of employment, neither Kristina White-Hill nor Monica Bliss  (who participated in the termination decision) had any knowledge of Severson voicing such concerns during the October 2023 town hall meeting.  (White-Hill Supp. Dec. ¶ 8; Bliss Dec. ¶ 35)

19.     The day after the town hall meeting, Bruce "Rio" Burton and Corrigan pulled Severson aside and asked why he had felt the need to raise the technology and communication issues at the town hall. (Dkt. # 25-1 at 131:21-24).

**RESPONSE**:     **Undisputed in part, disputed in part, but irrelevant and immaterial.**  SCJ does not dispute that Burton and Corrigan met with Severson after the town hall meeting to further discuss Severson's comments at the town hall meeting.  (Stewart Dec. Ex. A, Corrigan

4911-9606-5168.3

Dep. at 107:11-107:17) The testimony cited by Severson does not indicate that Burton or Corrigan's alleged actions were in response to any concerns raised by Severson about FMLA-related systems of either SCJ or Prudential, an inability to access any FMLA-related systems, or SCJ or Prudential's administration of the FMLA process. Additionally, prior to Severson's termination of employment, neither Kristina White-Hill nor Monica Bliss (who participated in the termination decision) had any knowledge of Severson voicing such concerns during the October 2023 town hall meeting. (White-Hill Supp. Dec. ¶ 8; Bliss Dec. ¶ 36) Neither Bruce Burton nor Tim Corrigan participated in the decision to terminate Severson's employment. (White-Hill Supp. Dec. ¶ 9; Bliss Dec. ¶ 35) Prior to his termination, Severson did not raise any complaints to Waxdale HR regarding any negative treatment by Burton or Corrigan. (White-Hill Supp. Dec. ¶ 10; Bliss Dec. ¶ 35)

20.     Severson replied that he had spoken up at the town hall because Burton and Corrigan did not listen to him. (Dkt. # 25-1 at 131:24-25).

**RESPONSE**:  **Undisputed, but irrelevant and immaterial.**  The testimony cited by Severson does not indicate that Burton or Corrigan's alleged actions were in response to any concerns raised by Severson about FMLA-related systems of either SCJ or Prudential, an inability to access any FMLA-related systems, or SCJ or Prudential's administration of the FMLA process.  Additionally, prior to Severson's termination of employment, neither Kristina White-Hill nor Monica Bliss (who participated in the termination decision) had any knowledge of Severson voicing such concerns during the October 2023 town hall meeting.  (White-Hill Supp. Dec. ¶ 8; Bliss Dec. ¶ 35)  Neither Bruce Burton nor Tim Corrigan participated in the decision to terminate Severson's employment.  (White-Hill Supp. Dec. ¶ 9; Bliss Dec. ¶ 34)

4911-9606-5168.3

Prior to his termination, Severson did not raise any complaints to Waxdale HR regarding any negative treatment by Burton or Corrigan. (White-Hill Supp. Dec. ¶ 10; Bliss Dec. ¶ 36)

21. The day after Severson's conversation with Burton and Corrigan, Corrigan requested a private meeting with Severson in Corrigan's office during which Corrigan asked Severson "was it worth it?" – referencing Severson's comments at the town hall meeting. (Dkt. # 25-1 at 132:1-4).

**RESPONSE**: **Disputed in part, undisputed in part, but irrelevant and immaterial.** SCJ does not dispute that Burton and Corrigan met with Severson after the town hall meeting to further discuss Severson's comments at the town hall meeting. (Stewart Dec. Ex. A, Corrigan Dep. at 107:24-107:17) SCJ does dispute that Corrigan asked Severson "was it worth it?" (Stewart Dec. Ex. A, Corrigan Dep. at 107:24-108:1) The testimony cited by Severson does not indicate that Burton or Corrigan's alleged actions were in response to any concerns raised by Severson about FMLA-related systems of either SCJ or Prudential, an inability to access any FMLA-related systems, or SCJ or Prudential's administration of the FMLA process. Additionally, prior to Severson's termination of employment, neither Kristina White-Hill nor Monica Bliss (who participated in the termination decision) had any knowledge of Severson voicing such concerns during the October 2023 town hall meeting. (White-Hill Supp. Dec. ¶ 8; Bliss Dec. ¶ 35) Neither Bruce Burton nor Tim Corrigan participated in the decision to terminate Severson's employment. (White-Hill Supp. Dec. ¶ 9; Bliss Dec. ¶ 34) Prior to his termination, Severson did not raise any complaints to Waxdale HR regarding any negative treatment by Burton or Corrigan. (White-Hill Supp. Dec. ¶ 10; Bliss Dec. ¶ 36)

22. After Severson's comments at the town hall and his subsequent conversations with Burton and Corrigan, Severson experienced suddenly and consistently negative treatment

4911-9606-5168.3

from Burton in the form of less desirable work assignments and a less friendly demeanor. (Dkt. # 25-1 at 173:19-174:15).

**RESPONSE**:  **Disputed and irrelevant and immaterial.**  Prior to his termination, Severson did not raise any complaints to Waxdale HR regarding any negative treatment by Burton or Corrigan.  (White-Hill Supp. Dec. ¶ 10; Bliss Dec. ¶ 36)  The testimony cited by Severson does not indicate that Burton or Corrigan's alleged actions were in response to any concerns raised by Severson about FMLA-related systems of either SCJ or Prudential, an inability to access any FMLA-related systems, or SCJ or Prudential's administration of the FMLA process. Additionally, prior to Severson's termination of employment, neither Kristina White-Hill nor Monica Bliss  (who participated in the termination decision) had any knowledge of Severson voicing such concerns during the October 2023 town hall meeting.  (White-Hill Supp. Dec. ¶ 8; Bliss Dec. ¶ 35)  Neither Bruce Burton nor Tim Corrigan participated in the decision to terminate Severson's employment.  (White-Hill Supp. Dec. ¶ 9; Bliss Dec. ¶ 34)

**PRUDENTIAL'S ADMINISTRATION OF SEVERSON'S FMLA CLAIM**

23.    On multiple occasions Severson attempted to report FMLA leave to Prudential via several methods but was unable to reach any representative or otherwise report the FMLA leave. (Dkt. # 25-25 at 62:19-63:13, 100:7-101:2).

**RESPONSE**:  **Disputed.**  Prudential's claim files for Severson reflect that Severson was able to timely communicate and regularly did communicate with Prudential by email, text, or phone regarding contemporaneous events on several occasions during the period from October 12, 2023 through January 2024.  For instance, when Severson contacted Prudential on October 12, 2023 regarding the absences listed in his DML, Severson was able to speak with a representative the same day and provide information regarding his claim.  (Glaser Dec. ¶ 4;

4911-9606-5168.3

Glaser Dec., Ex. B at SCJ-SEV0002216-SCJ-SEV0002230; Decot Dec., Ex. A (Severson Dep.) at 99:14-25, 107:14-109:25; Decot Dec., Ex. Q)  Additionally, Prudential's claim files for Severson reflect various other same day or next day follow-ups to Severson regarding reported absences.  (*See generally,* Glaser Dec. ¶ 4; Glaser Dec., Ex. B)

24.     Specifically, Severson "called [Prudential] a lot," and attempted to use their text message reporting method, but encountered significant problems doing so. (Dkt. # 25-1 at 115:24-116:4).

**RESPONSE**:   **Undisputed in part, disputed in part.**  SCJ does not dispute that Severson claims that Prudential's phone line "didn't work well."  SCJ does dispute that the evidence cited by Severson establishes that Prudential's phone line actually did not work well.  Additionally, SCJ notes that when Severson called Prudential on October 12, 2023 regarding the absences listed in his DML, Severson was able to speak with a representative the same day and provide information regarding his claim.  (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002216-SCJ-SEV0002230; Decot Dec., Ex. A (Severson Dep.) at 99:14-25, 107:14-109:25; Decot Dec., Ex. Q)

25.     Severson described that during the first six (6) months of Prudential's administration of SCJ's FMLA program its systems did not work properly, and it was "almost impossible to get ahold of anybody," despite his repeated attempts to do so. (Dkt. # 25-1 at 77:4-12, 78:8-15, 91:2-3, 100:9-23).

**RESPONSE**: **Disputed.**  Prudential's claim files for Severson reflect that Severson was able to timely communicate and regularly did communicate with Prudential by email, text, or phone regarding contemporaneous events on several occasions during the period from October 12, 2023 through January 2024.  For instance, when Severson contacted Prudential on October

12, 2023 regarding the absences listed in his DML, Severson was able to speak with a representative the same day and provide information regarding his claim. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002216-SCJ-SEV0002230; Decot Dec., Ex. A (Severson Dep.) at 99:14-25, 107:14-109:25; Decot Dec., Ex. Q) Additionally, Prudential's claim files for Severson reflect various other same day or next day follow-ups to Severson regarding reported absences. (*See generally,* Glaser Dec. ¶ 4; Glaser Dec., Ex. B)

26. Severson found that Prudential's phone line "didn't work very well," and that on four (4) or five (5) occasions, Prudential put him on hold and then hung up. (Dkt. # 25-1 at 77:4-12, 78:23-24).

**RESPONSE**: **Undisputed in part, disputed in part.** SCJ does not dispute that Severson claims that Prudential's phone line "didn't work well." SCJ does dispute that the evidence cited by Severson establishes that Prudential's phone line actually did not work well. Additionally, SCJ notes that when Severson called Prudential on October 12, 2023 regarding the absences listed in his DML, Severson was able to speak with a representative the same day and provide information regarding his claim. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002216-SCJ-SEV0002230; Decot Dec., Ex. A (Severson Dep.) at 99:14-25, 107:14-109:25; Decot Dec., Ex. Q)

27. Severson also found that the process of Prudential taking over administration of SCJ's FMLA program caused the FMLA certification and administration process to be confusing and prone to error. (Dkt. # 25-1 at 67:25-68:2, 86:2-5, 90:22-91:3, 104:3-4, 139:20-24).

**RESPONSE**: **Undisputed in part, disputed in part.** SCJ does not dispute that Severson felt the Prudential's take-over of the administration of SCJ's FMLA program caused the process to be confusing and prone to error. SCJ does dispute that the evidence cited by

4911-9606-5168.3

Severson establishes that SCJ's FMLA certification and administration process actually was confusing or prone to error.

28.     Due to delays in Prudential's processing of FMLA claims and reported absences, there would often be multi-week delays during which neither SCJ or employees could know whether certain absences were covered by FMLA or not. (Stewart Dec., Ex. A (Corrigan Dep. at 32:22-33:17, 45:10-46:4, 46:15-24); Dkt. # 25-25 at 85:4-20).

**RESPONSE**:    **Disputed.**    Corrigan testified only that the turn-around time between logging an absence in Kronos and the date on which that absence is coded as excused or unexcused under the FMLA could take a week to maybe three weeks.  The testimony cited by Severson does not reference any delays in Prudential's processing of FMLA claims and reported absences or multi-week delays on Prudential's part.  In fact, because the law requires an employer to allow employees at least fifteen days to provide a medical certification after an initial request and further requires employers to follow a certain process with respect to medical certifications that are deemed deficient, even the regular ordinary course certification process, with no delays of any kind, can take weeks to complete when timed from beginning to end. Likewise, the testimony cited by Severson does not establish that there were ever any delays in administering Severson's FMLA leave that were caused by Prudential as opposed to Severson's failure to either timely report his absences to Prudential or Severson's failure to return a medical recertification form supporting a need for leave to care for his mother during the period from August 9, 2023 through January 2024.

29.     Severson reported the issues surrounding Prudential's administration of the FMLA program to Bliss and Burton.  (Dkt. # 25-1 at 77:22-78:2).

**RESPONSE**:  **Disputed.**  (Bliss Dec. ¶¶ 29-32)

30. The confusion and difficulties presented by Prudential's administration of SCJ's FMLA program discouraged Severson from using FMLA, due to the likelihood of errors being committed, and the difficulty of getting in contact with anyone at Prudential. (Dkt. # 25-1 at 139:12-13).

**RESPONSE**: **Disputed.** The testimony cited by Severson is self-serving and conclusory and does not establish that Prudential's administration of SCJ's FMLA program was actually confusing or difficult in any way. In fact, Severson's cited evidence does not establish that any confusion or difficulty that Severson may have felt or experienced was due to Prudential's systems or actions as opposed to Severson's own failure to properly use Prudential's systems, failure to timely report his absences to Prudential as required, or failure to return a medical recertification form supporting a need for leave to care for his mother during the period from August 9, 2023 through January 2024.

31. Severson does not specifically recall submitting a certification request for his father's serious health condition. (Dkt. # 25-1 at 87:4-8).

**RESPONSE**: **Disputed and immaterial.** Severson testified that his February 2023 certification was for both his mother and father. (Dkt. # 25-1 at 60:18-61:20).

32. Severson acknowledges that he accidentally wrote his father's name rather than his mother's name on his November 2023 recertification paperwork. (Severson Dec., ¶ 21-22).

**RESPONSE**: **Undisputed but immaterial as to whether Severson "accidentally" wrote his father's name on the November 2023 recertification paperwork.**

33. Prior to his receipt of the October 2023 DML, and other than information contained in his initial February 13, 2023 FMLA packet, Severson does not recall receiving any

4911-9606-5168.3

notice that he needed to submit recertification paperwork to cover all FMLA absences accrued after August 9, 2023. (Dkt. # 25-1 at 172:10-173:2; Severson Dec., ¶ 8-9).

**RESPONSE**:  **Undisputed but immaterial.**  SCJ does not dispute that Severson does not recall now, years later, whether or not he received some other notice of a need to recertify; however, Severson's inability to recall whether he received any other notice of a need to recertify is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at \*1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")  Moreover, it is undisputed that the February 13, 2023 FMLA packet SCJ provided to Severson stated, in writing, that he would need to submit an initial certification form within thirty days and would then need to submit a new medical certification form after six months if the health condition persists.  (Pl. Fact Resp. ¶¶ 52-53)  Likewise, there is no dispute that Severson received the February 13, 2023 FMLA packet from SCJ.  (*Id.*)

34.    Severson does not recall receiving mailed correspondences from Prudential dated October 17, 2023, November 7, 2023, December 5, 2023, December 19, 2023, or December 20, 2023. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2).

**RESPONSE**:  **Undisputed but immaterial.**  SCJ does not dispute that Severson does not recall now, years later, whether or not he received certain mailed correspondence from Prudential; however, Severson's inability to recall whether he received such correspondence is not sufficient to create a genuine issue of material fact for purposes of summary judgment.  *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at \*1 (W.D. Wis. June 11, 2010)

16

(citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")  Moreover, it is undisputed that Severson told Corrigan that he had spoken with Prudential and discussed documentation that was needed and would be working on getting paperwork for a new certification (recertification) for the period from August 2023 through the-then date.  (Pl. Fact Resp. ¶ 77)

35.     In or around early November 2023, Severson attempted to work with Prudential to recertify his care of family member FMLA claim, and ultimately submitted certification paperwork that included his father's name. (Dkt. # 25-1 at 101:24-104:4, 111:25-113:7; Severson Dec., ¶ 20-23).

**RESPONSE**:  **Undisputed.**

36.     After receiving Severson's November 2023 FMLA certification paperwork, Prudential may have attempted to call Severson on three (3) occasions to discuss the alleged issues with his recertification request, but never actually spoke to him or left a voicemail. (Dkt. # 28-2 at 125, 159, 171).

**RESPONSE**:     **Undisputed.**     Prudential's records of its contemporaneous communications and/or attempts to communicate with Severson indicate that Prudential did call Severson on three occasions in an attempt to discuss the recertification.  Prudential was never able to leave a voicemail.  (*See* Glaser Dec. ¶ 4; Glaser Dec., Ex. B, SCJ-SEV0002328, SCJ-SEV0002362, SCJ-SEV0002374).

37.     Prudential did not text Severson notice of his allegedly incomplete November 2023 FMLA certification paperwork, even though it had the capability to do so, and Severson

had explicitly requested that Prudential communicate with him through text. (Dkt. # 28-2 at 266-267; Stewart Dec., Ex. F at 8 (Bliss Dep. Ex. 17)).

**RESPONSE**: **Disputed.** The evidence cited by Severson does not establish that Prudential did not text Severson regarding his deficient November 2023 FMLA certification paperwork in addition to emailing, calling him, and mailing him letters. The evidence cited by Severson also does not address Prudential's texting capabilities with respect to the comprehensive information set forth in Prudential's recertification letters.

38.     Following Severson's submission of his November 2023 FMLA certification paperwork, between the dates of November 9, 2023, and January 12, 2024, Prudential sent Severson twenty-one (21) emails in response to his proper reporting of absences which prominently displayed the phrase: "There is no action required at this time." (Dkt. # 28-2 at 122, 127, 132, 137, 142, 147, 156, 165, 171, 191, 197, 202, 207, 212, 240, 297, 302, 307, 312, 317, 322).

**RESPONSE**: **Undisputed but materially incomplete**. Among other things, all of the emails state "There is no action required at this time. *We will review your request and notify you when a decision has been made or if additional information is needed*. To check the status of your absence request or report more time off, please access the Prudential My Benefits website: www.prudential.com/mybenefits." (emphasis added)

39.     Severson does not recall ever being informed that his November 2023 FMLA certification paperwork was inadequate or that Prudential needed recertification documents for his mother. (Dkt. # 25-1 at 118:18-24, 173:10-12; Severson Dec., ¶ 24).

**RESPONSE**: **Undisputed but immaterial.** SCJ does not dispute that Severson does not recall now, years later, whether or not he was informed that his FMLA November 2023

certification paperwork was deficient; however, Severson's inability to recall whether he received such notice is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

40.     Severson testified that had he been informed of this requirement, he would have taken the necessary steps to do so. (Dkt. # 25-1 at 173:10-12; Severson Dec., ¶ 25).

**RESPONSE**:     **Undisputed but immaterial.**     Severson's self-serving, after-the-fact testimony regarding what he would have done does not create any material dispute of fact.

41.     After his October 2023 DML, Severson does not recall receiving any further notice from Prudential or SCJ that he was at risk of discipline in connection with his FMLA certification. (Dkt. # 25-1 at 171:5-11).

**RESPONSE**:  **Undisputed but immaterial.**  SCJ does not dispute that Severson does not recall now, years later, whether or not he received further notice that he was at risk of discipline; however, Severson's inability to recall whether he received such notice is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

42.     By letter dated December 5, 2023, and addressed to Severson, Prudential rejected Severson's November 2023 FMLA certification paperwork and stated, without explanation that

4911-9606-5168.3

to approve his claim Prudential "would need a certification for [Severson's] mother." (Dkt. # 25-21 at 2).

**RESPONSE**:  **Undisputed in part, disputed in part and materially misleading.**  SCJ does not dispute that Prudential's December 5, 2023 letter was addressed to Severson and stated that Prudential "would need a certification for [Severson's] mother".  SCJ disputes that Prudential rejected Severson's November 2023 FMLA certification paperwork "without explanation."  The December 5, 2023 letter actually stated the following, among other things regarding the medical certification:  "**Medical Certification:**  The certification we received was for your father.  We would need a certification for your mother."  The letter also described various other information that Severson needed to provide on the certification form.

43.     There is no evidence that Prudential ever opened a new FMLA claim for Severson's father, despite receiving FMLA certification paperwork indicating that Severson might have initiated such a claim. (Dkt. # 28; Dkt. # 28-1; Dkt. # 28-2).

**RESPONSE**:  **Undisputed but irrelevant and immaterial.**  It is undisputed that Severson's absences during the period from August 8, 2023 through January 12, 2024 were related to care for his mother, not his father.  It is further undisputed that, on October 17, 2023, Prudential sent Severson a letter instructing him to provide a completed copy of the Care of a Family Member Medical Certification enclosed with the letter by November 16, 2023, and that, between October 17, 2023 and date his employment was terminated, Severson did not provide a complete medical certification form certifying a need for leave to care for his mother.   (Pl's Fact Resp. ¶¶ 83, 94, 98)

44.     In its December 19, 2023, letter, Prudential stated that a number of Severson's absences were not approved for FMLA leave. (Dkt. # 25-22).

20

**RESPONSE**:  **Undisputed.**

45.     Prudential's December 19, 2023 letter further included the following language:

> So we may continue processing your request, please provide us with a completed copy of the Care of a Family Member (COFM) Medical Certification enclosed with this letter by January 18, 2024.
>
> If we do not receive the completed form by January 18, 2024, we may be unable to approve your leave of absence request. If you are unable to meet this deadline or need to make a change to your leave of absence request, contact Prudential using the information above. If no supporting documentation is received by this date, your absences may not be protected under federal, state or company family and medical leave job protection laws or programs.

(Dkt. # 25-22). (emphasis in original).

**RESPONSE**:  **Undisputed but materially incomplete.**  Prudential's December 19, 2023 letter also instructed Severson to read the letter in its entirety and said the letter outlined the actions that Severson needed to take so Prudential could process his request.  Prudential's December 19, 2023 letter further indicated that the only date for which leave time was currently pending was for December 13, 2023 and indicated that the reason such leave was pending was due to the need for a medical certification.

46.     In a letter dated December 20, 2023, and addressed to Severson, Prudential approved the following of Severson's absences as FMLA leave:

- 02/09/2023
- 02/10/2023
- 02/16/2023
- 02/17/2023
- 02/24/2023
- 02/27/2023
- 04/07/2023
- 04/10/2023
- 04/11/2023
- 04/17/2023
- 05/16/2023
- 05/17/2023

21

- 05/18/2023
- 06/12/2023
- 06/13/2023
- 06/14/2023
- 06/19/2023
- 06/22/2023
- 06/23/2023
- 06/28/2023
- 06/29/2023
- 06/30/2023
- 07/05/2023
- 07/06/2023
- 07/07/2023
- 07/10/2023
- 07/11/2023
- 07/14/2023
- 07/17/2023
- 07/24/2023
- 07/26/2023
- 08/04/2023
- 08/08/2023

(Dkt. #25-23).

**RESPONSE**: **Undisputed.**

47. Prudential's December 20, 2023 letter approved as FMLA *every single* absence on Severson's DML that occurred within the first six (6) months of his FMLA claim. (Dkt. # 25-16; Dkt. # 25-23).

**RESPONSE**: **Undisputed but immaterial.** The reason such absences were included on Severson's October 12, 2023 DML was because, prior to October 12, 2023, Severson had not reported such absences to Prudential.

48. For every single absence listed on Severson's DML that was *not* approved by Prudential's December 20, 2023 letter, Severson still had until January 18, 2024, to provide certification to support leave for those dates, pursuant to its December 19, 2023 letter. (Dkt. # 25-22; Dkt. # 25-16).

4911-9606-5168.3

**RESPONSE**:  **Disputed.**  As of December 20, 2023, the only dates for which leave time was currently pending and for which Severson had until January 18, 2024 to provide a medical certification were December 13, 2023 and December 19, 2023.  Leave for twenty absences beginning on August 28, 2023 and running through December 12, 2023 had been denied by Prudential.  Prior to the termination of Mr. Severson's employment, SCJ confirmed that Prudential's decision to deny leave (due to insufficient medical certification) for the twenty dates beginning on August 28, 2023 and running through December 12, 2023 was final.  (Supp. White-Hill Dec. ¶ 3; Bliss Dec. ¶ 28)

49.  On December 21, 2023, Prudential texted Severson that "an approval has been made on your claim." (Dkt. # 28-2 at 295).

**RESPONSE**:  **Undisputed but materially incomplete**.  Prudential's December 21, 2023 full text message states "Prudential Claim #13397268:  Courtesy Notification – An approval has been made on your claim.  For more details, visit www.Prudential.com/mybenefits and click Claim & Absence and Claim Status.  Text STOP to unsubscribe."

### SCJ'S DISCIPLINING AND TERMINATION OF SEVERSON

50.  On September 27, 2023, Bliss sent the following email to SCJ's Leave team:

4911-9606-5168.3



From: Bliss, Monica R. <MRBliss@scj.com>
Sent: Wednesday, September 27, 2023 9:51 AM
To: .GR US MyHR North America Leave Support <MyHR_North_America_US_Leaves@scj.com>; .GR US Wax -
SCJMedCenterInbox <WaxdaleMedicalCenter@scj.com>
Subject: RE: Absence Dates
Importance: High

DISCIPLINE PENDING

Hi Team,

Do you know if the following dates are covered for Rodney Severson or were reported to Medical?

7/10 – no call to MC
7/11 – no call to MC
7/14 – EE stated "FMLA absence"
7/17 – EE stated "FMLA absence" related to family member
7/24 – EE stated "FMLA absence" related to family member
7/26 – EE stated "FMLA absence" related to family member
8/4 – EE stated "FMLA absence" related to family member
8/8 – EE stated "FMLA absence" related to family member
8/28 – no call to MC
8/29 – EE stated "FMLA absence" related to family member – per EE "technically day 2, tried to call yesterday but was unable to get through"
9/1 – EE stated "FMLA absence"
9/5 – EE stated "FMLA absence" related to family member
9/8 – EE stated "FMLA absence"
9/15 – EE stated "FMLA absence" related to family member

Thank you!

SCJohnson
A family company
at work for a better world
GO FURTHER WITH OUR FAMILY™

Monica Bliss
Associate Manager, Field HR, Waxdale
1525 Howe Street, MS 208, Racine, WI 53403
Phone: (262) 260.4720 | Email: mrbliss@scj.com

(Stewart Dec., Ex. E (Bliss Dep. Ex. 7 at 5)).

**RESPONSE**: **Undisputed.**

51. Several of the dates included in Severson's DML were dates that Bliss knew Severson had reported as FMLA. (Stewart Dec., Ex. E (Bliss Dep. Ex. 7 at 5); Dkt. # 25-25 at 24:25-26:17).

**RESPONSE**: **Disputed.** The testimony cited by Severson does not support this proposed fact. Bliss did not testify that she knew Severson had reported any of the dates as FMLA; rather, Bliss testified that she was flagging the dates for Severson as absences that might be potentially covered by the FMLA if Severson reported them to Prudential. (Decot Dec., Ex. Y (Bliss Dep.) at 24:25-26:23)

52. Several of the dates included in Severson's DML were dates that Bliss knew Prudential was reviewing for FMLA coverage. (Stewart Dec., Ex. E (Bliss Dep. Ex. 7 at 2-3)).

**RESPONSE**: **Disputed.** The cited evidence establishes only that Bliss was aware that Prudential was reviewing both of Severson's "cases." The cited evidence does not specify whether the dates listed in Severson's DML were dates that had been reported by Severson to Prudential or if they were otherwise under review by Prudential.

53. Bliss highlighted some of the dates included in Severson's DML specifically because she knew Severson had reported them as FMLA-protected absences. (Dkt. # 25-25 at 25:4-13).

**RESPONSE**: **Disputed.** The testimony cited by Severson does not support this proposed fact. Bliss did not testify that she knew Severson had reported any of the dates to Prudential as FMLA-related; rather, Bliss testified that she was flagging the dates for Severson as absences that might be potentially covered by the FMLA if Severson reported them to Prudential. (Decot Dec., Ex. Y (Bliss Dep.) at 24:25-26:23)

54. Bliss also explicitly instructed Corrigan to tell Severson to report any absences that he believed to be protected by FMLA to Prudential. (Dkt. # 25-28 at 2).

**RESPONSE**: **Undisputed.**

55. When Corrigan provided Severson with the DML, Severson responded that the dates listed in the DML corresponded with absences protected under FMLA either for himself or his mother. (Dkt. # 25-1 at 97:6-8).

**RESPONSE**: **Undisputed.**

56. Corrigan responded to Severson, claiming that SCJ did not have FMLA documentation for his mother. (Dkt. # 25-1 at 97:8-10).

**RESPONSE**: **Undisputed.**

25

57. Severson responded to Corrigan, noting that SCJ did in fact have FMLA documentation for his mother's serious health condition and had been providing him leave in connection therewith. (Dkt. # 25-1 at 97:10-12).

**RESPONSE**: **Undisputed.**

58. Because Severson believed the dates on the DML to be covered by FMLA, he declined to sign the DML, and asked if his one (1) day suspension could be delayed while he worked to correct the errors. (Dkt. # 25-1 at 97:12-14; Dkt. # 25-25 at 30:22-31:2; Stewart Dec., Ex. D at 7 (Bliss Dep. Ex. 21)).

**RESPONSE**: **Disputed as to any suggestion that there were actually "errors" that needed to be corrected; otherwise undisputed and immaterial.**

59. On October 12, 2023, the same day Severson received the DML, Severson contacted Prudential to report the absences listed on the DML as being covered by FMLA. (Dkt. # 25-25 at 33:9-34:7; Stewart Dec., Ex. B (Bliss Dep. Ex. 9)).

**RESPONSE**: **Undisputed.**

60. After reporting the absences to Prudential, Severson informed Corrigan that he was working to obtain the necessary paperwork to recertify his care of family member FMLA claim, and Corrigan relayed this update to Bliss. (Stewart Dec., Ex. D at 7 (Bliss Dep. Ex. 21)).

**RESPONSE**: **Undisputed.**

61. Despite Severson refusing to sign the DML and trying to contest the imposition of discipline, Severson was nevertheless forced to serve a one (1) day unpaid suspension due to the imposition of the DML. (Dkt. # 25-1 at 101:5-9).

26

4911-9606-5168.3

**RESPONSE**: **Undisputed in part, disputed in part.** SCJ does not dispute that Severson served a one-day suspension. The evidence cited by Severson does not support the remainder of the proposed fact.

62. Around a week after receiving the DML, Severson, along with several other members of his team, met with a Human Resources representative from SCJ to discuss issues with Prudential's administration of FMLA leave. (Dkt. # 25-1 at 97:17-19; Severson Dec., ¶ 15-16).

**RESPONSE**: **Disputed.** Severson is unable to identify the "Human Resources representative" he claims to have spoken with. Further, none of the HR personnel who were available for Severson to speak to in October or November 2023, i.e., Monica Bliss, Kristina White-Hill, or Leave Team members Kelly Kessel and Joanna Young (who were onsite at the Waxdale facility in November 2023 to answer employee questions regarding SCJ's leave processes including, FMLA), ever told Severson that he did not have anything to worry about with respect to his FMLA leave. (Declaration of Kelly Kessel ("Kessel Dec.") ¶¶ 5-8, Declaration of Joanna Young ("Young Dec.") ¶¶ 5-8; Bliss Dec. ¶¶ 29-32; White-Hill Supp. Dec. ¶¶ 4-6)

63. After reviewing and discussing Severson's FMLA file, the Human Resources representative assured him that, while there were issues with SCJ's accounting for his FMLA paperwork, she would "take care of it," and that he did "not have to worry about it." (Dkt. # 25-1 at 98:7-99:1; Severson Dec., ¶ 19).

**RESPONSE**: **Disputed.** Severson is unable to identify the "Human Resources representative" he claims to have spoken with. Further, none of the HR personnel who were available for Severson to speak to in October or November 2023, i.e., Monica Bliss, Kristina

27

White-Hill, or Leave Team members Kelly Kessel and Joanna Young (who were onsite at the Waxdale facility in November 2023 to answer employee questions regarding SCJ's leave processes including, FMLA), ever told Severson that he did not have anything to worry about with respect to his FMLA leave. (Kessel Dec. ¶¶ 7-8, Young Dec. ¶¶ 7-8; Bliss Dec. ¶¶ 31-32; White-Hill Supp. Dec. ¶ 6)

64.     During Severson's conversation with the Human Resources representative, Bliss entered the room, whispered in the representative's ear, and then exited the room. (Dkt. # 25-1 at 99:3-6; Severson Dec., ¶ 18).

**RESPONSE**:  **Disputed.**  (Bliss Dec. ¶ 31)

65.     After Bliss exited the room, the Human Resources representative told Severson "You're covered. Don't worry about it. We'll take care of everything. Thank you very much." (Dkt. #25-1 at 99:6-9; Severson Dec., ¶ 19).

**RESPONSE**:     **Disputed.**    Severson is unable to identify the "Human Resources representative" he claims to have spoken with.  Further, none of the HR personnel who were available for Severson to speak to in October or November 2023, i.e., Monica Bliss, Kristina White-Hill, or Leave Team members Kelly Kessel and Joanna Young (who were onsite at the Waxdale facility in November 2023 to answer employee questions regarding SCJ's leave processes including, FMLA), ever told Severson that he did not have anything to worry about with respect to his FMLA leave. (Kessel Dec. ¶¶ 7-8, Young Dec. ¶¶ 7-8; Bliss Dec. ¶¶ 31-32; White-Hill Supp. Dec. ¶ 6)

66.     After this meeting, Severson understood that SCJ was going to rectify the alleged issues with his FMLA claim which had given rise to the DML. (Dkt. # 25-1 at 99:9-13; Severson Dec., ¶ 19).

4911-9606-5168.3

**RESPONSE**: **Disputed.** Severson is unable to identify the "Human Resources representative" he claims to have spoken with. Further, none of the HR personnel who were available for Severson to speak to in October or November 2023, i.e., Monica Bliss, Kristina White-Hill, or Leave Team members Kelly Kessel and Joanna Young (who were onsite at the Waxdale facility in November 2023 to answer employee questions regarding SCJ's leave processes including, FMLA), ever told Severson that he did not have anything to worry about with respect to his FMLA leave. (Kessel Dec. ¶¶ 7-8, Young Dec. ¶¶ 7-8; Bliss Dec. ¶¶ 31-32; White-Hill Supp. Dec. ¶ 6)

67. At no time after Severson's October 2023 DML did Corrigan or anyone else from SCJ reach out to inform Severson that his FMLA claim was not approved. (Dkt. # 25-1 at 171:5-11; Severson Dec., ¶ 24).

**RESPONSE**: **Undisputed.** However, Prudential was regularly reaching out to Severson regarding the status of his FMLA claim. (*See generally,* Glaser Dec. ¶ 4; Glaser Dec., Ex. B)

68. Starting in December 2023, Bliss began investigating Severson's FMLA claim and attendance record which eventually led to Severson's termination. (Dkt. # 25-25 at 68:2-4, 69:13-14; Stewart Dec., Ex. F (Bliss Dep. Ex 17)).

**RESPONSE**: **Disputed.** The evidence cited by Severson does not support the proposed fact. The cited evidence reflects only that Bliss was seeking additional information regarding Severson's leave status.

69. In the course of this investigation, Bliss learned that while Severson had indicated to Prudential that his preferred method of communication was texting, Prudential had called and mailed letters to him regarding its request for modified recertification paperwork. (Stewart Dec., Ex. F at 8 (Bliss Dep. Ex. 17)).

**RESPONSE**: **Undisputed in part, disputed in part.** SCJ does not dispute that, on December 21, 2023, Associate Manager, Benefits – Health and Welfare Samantha Moshinski emailed Bliss and indicated that SCJ had learned from Prudential that Severson's preferred communication method was texting and that Prudential had been attempting to call and mail letters to Severson. The evidence cited by Severson does not establish that Prudential did not text Severson in addition to calling him and mailing him letters.

70. During Bliss's investigation into Severson's attendance, she never discussed any of her concerns with Severson or requested any information or documentation from him to support his reported FMLA dates. (Dkt. # 25-25 at 70:11-14, 73:9-16; Dkt. # 25-1 at 171:4-11; Severson Dec., ¶ 24).

**RESPONSE**: **Undisputed in part, disputed in part.** SCJ does not dispute that, during the period from December 2023 through January 2024, Bliss did not have any discussions with Severson regarding FMLA-related concerns or request any information or documentation from Severson regarding his reported FMLA dates. SCJ does dispute any implication that Bliss did not rely on information obtained from Severson as part of her pre-termination review of his absences. Among other things, Bliss had emails from Severson indicating reasons for his absences on certain dates. Specifically, on March 30, 2023, Severson informed Monica Bliss that his absences on February 24 and 27, 2023 were for Severson's own health condition (migraines). (Pl's Fact Resp. ¶¶ 59-60) Severson's absences on February 24 and 27, 2023, were not initially approved as FMLA leave because they were not dates covered by the April 19, 2023 Certification of Health Care Provider for Employee's Serious Health Condition form provided by Severson to SCJ. (Pl's Fact Resp. ¶ 62) Severson did not initially indicate that his absences on April 7, 10, 11, or 17, 2023 were FMLA-related, despite being prompted by Bliss on May 24,

4911-9606-5168.3

2023, to report any FMLA-related absences to the Leave Team. (Pl's Fact Resp. ¶¶ 63, 66) Several months later, on October 12, 2023, after being issued a DML, Severson reported these absences to Prudential as FMLA leave related to care of his mother. (Pl's Fact Resp. ¶¶ 72, 76)

71. During Bliss's investigation into Severson's attendance, Bliss never discussed any of her concerns regarding Severson's absence reporting with Corrigan. (Stewart Dec., Ex. A (Corrigan Dep. at 41:16-42:6); Dkt. # 25-1 at 171:4-11).

**RESPONSE**: **Disputed.** The evidence cited by Severson does not support the proposed fact. The cited evidence reflects only that Corrigan did not know Severson was going to be terminated before Severson was terminated, and did not know the reason for Severson's termination.

72. During Bliss's investigation into Severson's attendance, Bliss never asked Severson about whether or not he had reported the absences in question to Prudential, instead relying solely on information she received from SCJ's leave team. (Dkt. # 25-25 at 87:16-22; Dkt. # 25-1 at 171:4-11; Severson Dec., ¶ 24).

**RESPONSE**: **Undisputed.**

73. On January 10, 2024, Bliss drafted an executive summary which outlined justifications for SCJ to terminate Severson's termination, including and limited to the following:

    a. Severson's accrual of unexcused absences after receiving the October 2023 DML.

    b. Severson's alleged dishonesty regarding whether certain absences in February and April of 2023 were for his own or his family member's serious health condition.

    c. Severson's alleged failure to follow proper reporting procedures.

(Dkt. # 25-25 at 58:18-59:15; Stewart Dec., Ex. G (Bliss Dep. Ex. 15)).

31

**RESPONSE**: **Undisputed in part, disputed in part.** SCJ does not dispute that, on January 10, 2024, Bliss drafted an executive summary outlining the reasons for recommending that Severson's employment be terminated. SCJ likewise does not dispute that the reasons listed in the proposed statement of fact were addressed in Bliss's January 10, 2024 executive summary. SCJ disputes that the executive summary did not otherwise contain additional information justifying termination of Severson's employment.

74. On January 16, 2024, SCJ terminated Severson's employment, based on the reasons outlined in Bliss's executive summary. (Dkt. # 25-25 at 59:3-59:15; Dkt. # 25-24).

**RESPONSE**: **Undisputed.**

75. Severson was "shocked" by his termination largely because he "was told very directly to [his] face," by SCJ's Human Resources representative that he "did not have anything to worry about," with respect to his FMLA leave." (Dkt. # 25-1 at 170:5-11).

**RESPONSE**: **Disputed.** Severson is unable to identify the "Human Resources representative" he claims to have spoken with. Further, none of the HR personnel who were available for Severson to speak to in October or November 2023, i.e., Monica Bliss, Kristina White-Hill, or Leave Team members Kelly Kessel and Joanna Young (who were onsite at the Waxdale facility in November 2023 to answer employee questions regarding SCJ's leave processes including, FMLA), ever told Severson that he did not have anything to worry about with respect to his FMLA leave. (Kessel Dec. ¶¶ 5-8, Young Dec. ¶¶ 5-8; Bliss Dec. ¶¶ 31-32; White-Hill Supp. Dec. ¶ 6)

76. These representations made Severson believe that the "FMLA time that [he] had taken was covered," and that any apparent issues with respect thereto were "just computer and log-in errors" due to the "many problems with the [FMLA] system." (Dkt. # 25-1 at 170:11-16).

4911-9606-5168.3

**RESPONSE**: **Disputed.** Severson is unable to identify the "Human Resources representative" he claims to have spoken with. Further, none of the HR personnel who were available for Severson to speak to in October or November 2023, i.e., Monica Bliss, Kristina White-Hill, or Leave Team members Kelly Kessel and Joanna Young (who were onsite at the Waxdale facility in November 2023 to answer employee questions regarding SCJ's leave processes including, FMLA), ever told Severson that he did not have anything to worry about with respect to his FMLA leave. (Kessel Dec. ¶¶ 5-8, Young Dec. ¶¶ 5-8; Bliss Dec. ¶¶ 31-32; White-Hill Supp. Dec. ¶ 6)

77. Bliss confirmed that SCJ's allegations of untimely reporting specifically referred to Severson's attempt to correct errors on the DML, as the form instructed him to do. (Dkt. # 25-25 at 56:6-57:2, 59:16-60:4).

**RESPONSE**: **Disputed.** The testimony cited by Severson does not support this proposed fact or otherwise refer to any errors on the DML. Bliss testified only that one of the reasons for Severson's termination was his failure to timely report absences to Prudential in accordance with SCJ's policies and procedures.

78. At the time of Severson's termination, he still had two (2) days left to provide certification documentation, per Prudential's December 19, 2023 correspondence. (Dkt. # 25-22).

**RESPONSE**: **Undisputed in part, disputed in part.** As of December 20, 2023, the only dates for which leave time was currently pending and for which Severson had until January 18, 2024 to provide a medical certification were December 13, 2023 and December 19, 2023. Leave for twenty absences beginning on August 28, 2023 and running through December 12, 2023 had been denied by Prudential due to insufficient medical support. (Glaser Dec. ¶ 4; Glaser

33

Dec., Ex. B at SCJ-SEV0002480-SCJ-SEV0002484; Decot Dec., Ex. A (Severson Dep.) at 123:10-21; Decot Dec., Ex. W) Prior to the termination of Mr. Severson's employment, SCJ confirmed that Prudential's decision to deny leave (due to insufficient medical certification) for the twenty dates beginning on August 28, 2023 and running through December 12, 2023 was final. (White-Hill Supp. Dec. ¶ 3; Bliss Dec. ¶ 28)

79.     Bliss confirmed that SCJ's allegation of dishonesty specifically and solely referred to an apparent discrepancy between Severson's initial reasoning for an absence and the reasoning he provided when he attempted to correct what he believed to be inaccuracies in the dates included in the DML. (Dkt. # 25-25 at 53:20-54:13).

**RESPONSE**:     **Disputed.**     The testimony cited by Severson does not support this proposed fact or otherwise refer to correction of inaccuracies in the dates on the DML. Bliss testified only that the providing of dishonest information by Severson referred to dates that he had reported as sick leave for himself and then later reported them as leave to care for a family member.

80.     Bliss assumed, without evidence of intent, that the apparent discrepancies meant that Severson intentionally and dishonestly provided incorrect information. (Dkt. # 25-25 at 60:12-24, 73:4-20).

**RESPONSE**: **Disputed.** The evidence cited by Severson does not support the proposed fact. Bliss testified that she relied on the information Severson provided when he called in his absences, when he emailed Bliss about the reasons for the absences, and what he reported to Prudential regarding the reason for the absence. Bliss also explicitly testified that she could not make assumptions about what Severson intended.

4911-9606-5168.3

81. Corrigan, Severson's direct supervisor, was not aware of any instances of Severson ever being dishonest in the course of his employment, and had no reason to believe he ever was. (Stewart Dec., Ex. A (Corrigan Dep. at 39:12-22)).

**RESPONSE**: **Undisputed but immaterial.**

82. Other than her belief that Severson had been dishonest in reporting the reasoning for his absences, Bliss was not aware of any instances of Severson being dishonest in the course of his employment. (Dkt. # 25-25 at 54:5-13).

**RESPONSE**: **Undisputed but immaterial.**

83. Bliss's specific allegation of dishonesty involved Severson initially reporting six (6) absences between February 24, 2023 and April 17, 2023 as being for his own health and later logging those absences under his care of family FMLA claim. (Dkt. # 25-25 at 93:15-25).

**RESPONSE**: **Undisputed.**

84. Prior to Bliss drafting Severson's termination executive summary, she was aware that Prudential was providing Severson extensions to allow him to provide proper certification documentation. (Stewart Dec., Ex. H (Bliss Dep. Ex. 16) at 3; Dkt. # 25-25 at 64:7-65:17).

**RESPONSE**: Undisputed.

85. At no time prior to Severson's termination did SCJ provide notice to Severson about its allegations that he was being dishonest about his FMLA requests, provide him with an opportunity to respond to such allegations, otherwise seek information from him that could confirm or rebut its suspicions, or even notify him that there were concerns regarding the management of his FMLA claim. (Dkt. # 25-25 at 54:14-25, 78:2-9; Dkt. # 25-1 at 171:4-11; Severson Dec., ¶¶ 24-26).

**RESPONSE**: **Undisputed.**

86. At no time prior to Severson's termination did Bliss or anyone else from SCJ Human Resources request from Corrigan the log of text messages wherein Severson reported his absences to Corrigan, despite Bliss's knowledge that such messages existed. (Dkt. # 25-25 at 63:14-64:5; Stewart Dec., Ex. A (Corrigan Dep. at 53:9-22, 98:5-9)).

**RESPONSE**:  **Undisputed.**

Dated: March 13, 2026.

/s/ Carmen N. Decot
Carmen N. Decot, WI Bar # 1054862
John R. FitzGerald, WI Bar # 1120150
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone:  414-297-5568 (CND)
Telephone:  414-297-5079 (JRF)
Facsimile:  414-297-4900
Email:  cdecot@foley.com
Email:  jfitzgerald@foley.com

*Attorneys for Defendant S.C. Johnson & Son, Inc.*

36