RODNEY SEVERSON,

        Plaintiff,

vs.

        CASE NO. 2:24-CV-1063

S.C. JOHNSON & SON, INC.,

        Defendant.

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF PROPOSED MATERIAL FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil L.R. 56, Defendant S.C. Johnson & Son, Inc. ("SCJ" or the "Company"), by its attorneys Foley & Lardner LLP, hereby submits its Reply to Plaintiff's Response to Defendant's Statement of Proposed Material Facts.

## THE PARTIES AND JURISDICTION

*1. Plaintiff Rodney Severson ("Severson") is a citizen of Wisconsin. (Compl. ¶ 4)*

**No dispute.**

**REPLY**: Undisputed.

*2. Defendant S.C. Johnson & Son, Inc. is a Wisconsin corporation with its home office and principal place of business is located at 1525 Howe Street, Racine, Wisconsin 53403. (Compl. ¶ 5; Answer ¶ 5)*

**No dispute.**

**REPLY**: Undisputed.

*3.     Severson brought this action against SCJ alleging interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2615(a)(1)-(2). (Compl. ¶¶ 1, 53-70)*

**No dispute.**

<u>**REPLY**</u>:     Undisputed.

*4.     The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331.  (Compl. ¶ 2; Answer ¶ 2)*

**No dispute.**

<u>**REPLY**</u>:     Undisputed.

*5.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b) because SCJ is a Wisconsin corporation with a principal place of business in the Eastern District of Wisconsin and a substantial part of the alleged events or omissions giving rise to Severson's claims occurred within the geographical boundaries of the Eastern District of Wisconsin.  (Compl. ¶ 3; Answer ¶3)*

**No dispute.**

<u>**REPLY**</u>:     Undisputed.

### <u>S.C. JOHNSON & SON, INC.'S BUSINESS AND POLICIES APPLICABLE TO SEVERSON'S EMPLOYMENT</u>

*6.     S.C. Johnson & Son, Inc. manufactures and packages consumer-branded products such as Scrubbing Bubbles®, Drano®, Glade®, Ziploc®, OFF!®, Windex®, and Shout®, many of which are manufactured at SCJ's Waxdale facility in Sturtevant, Wisconsin. (Declaration of Kristina White-Hill ("White-Hill Dec.") ¶ 3.)*

**No dispute.**

<u>**REPLY**</u>:     Undisputed.

<u>**SCJ's Work Rules, Waxdale Attendance Guidelines, and Waxdale Call In Procedures**</u>

*7.        During Severson's employment with SCJ, SCJ had in place and published a set of work rules (PERS 015) that provided examples of the types of conduct that warrant discipline including, among other things, tardiness, absences or abuse of the sickness and leave of absence policies and providing false, dishonest or misleading information in any circumstances in any way related to the employee's employment.  (White-Hill Dec. ¶ 5)*

**No dispute.**

<u>**REPLY**</u>:        Undisputed.

*8.        During Severson's employment with SCJ, SCJ had in place and published an attendance policy for employees working at SCJ's Waxdale facility, which was available to employees on SCJ's online MyHR portal.  (White-Hill Dec. ¶ 6; Declaration of Carmen N. Decot ("Decot Dec."), Ex. A (Deposition of Rodney Severson ("Severson Dep.") at 26:1-29:13; Decot Dec., Ex. B at SCJ-SEV0001539-1542).*

**No dispute.**

<u>**REPLY**</u>:        Undisputed.

*9.        SCJ's Waxdale Attendance Guidelines for Waxdale employees emphasized the importance of attendance to the Company and provided that "frequent unexcused absences, tardiness, and leaving early may result in disciplinary action, up to and including termination of employment."  (White-Hill Dec. ¶ 7; Decot Dec., Ex. A (Severson Dep.), Decot Dec. Ex. B at SCJ-SEV0001539).*

**No dispute.**

<u>**REPLY**</u>:        Undisputed.

3

10.     SCJ's Waxdale Attendance Guidelines further stated that employees "must be at their appointed workstations, on time, fully ready and able to work at the start of their shift" and, if an employee is scheduled to work and will be absent or late to work, the employee must notify the appropriate personnel (as outlined in the Company's Waxdale Call-In Procedure) at least thirty (30) minutes prior to the employee's scheduled start time. (White-Hill Dec. ¶ 8; Decot Dec., Ex. A (Severson Dep.) at 29:14-25, 32:7-16, Decot Dec., Ex. B at SCJ-SEV0001539).

**No dispute.**

**REPLY**:     Undisputed.

11.     During Severson's employment with SCJ, SCJ had in place and published Waxdale Call-In Procedures which required Waxdale employees to notify the Waxdale Medical Center and their supervisor or manager if they were absent from work due to sickness or for a Family & Medical Leave Act ("FMLA") qualifying reason. (White-Hill Dec. ¶ 9; Decot Dec., Ex. A (Severson Dep.) at 33:15-24; Decot Dec., Ex. B at SCJ-SEV0001543)

**No dispute.**

**REPLY**:     Undisputed.

12.     When providing notice of an absence or late arrival, Waxdale employees were required to provide information about the absence or late arrival, the need for leave (if applicable), the estimated length of absence or estimated time of arrival, and a call back number where the employee can be reached. (White-Hill Dec. ¶ 10; Decot Dec., Ex. A (Severson Dep.); Decot Dec., Ex. B at SCJ-SEV0001541)

**No dispute.**

**REPLY**:     Undisputed.

4

*13. SCJ's Waxdale Attendance Guidelines also defined the types of absences that would be treated as excused absences from work. (White-Hill Dec. ¶ 11; Decot Dec., Ex. A (Severson Dep.) at 32:17-21; Decot Dec., Ex. B at SCJ-SEV0001541-1542)*

**No dispute.**

<u>**REPLY**</u>: Undisputed.

*14. Per SCJ's Waxdale Attendance Guidelines, excused absences included, but were not limited to, absences due to FMLA leave. (White-Hill Dec. ¶ 12; Decot Dec., Ex. A (Severson Dep.) at 32:22-33:9; Decot Dec. Ex. B at SCJ-SEV0001541-1542)*

**No dispute.**

<u>**REPLY**</u>: Undisputed.

*15. For all unexcused absences, late arrivals, early departures, or other violations of the Waxdale Call-In Procedure, employees were assessed attendance points in accordance with the Waxdale Attendance Guidelines. (White-Hill Dec. ¶ 13; Decot Dec., Ex. A (Severson Dep.) at 26:9-27:10; Decot Dec. Ex. B at SCJ-SEV0001539-1541)*

**No dispute.**

<u>**REPLY**</u>: Undisputed.

*16. Per SCJ's Waxdale Attendance Guidelines, employees received two (2) attendance points for an "Unexcused Absence," which was defined as "[t]ime away from work greater than or equal to 60 minutes; including overtime," with each shift that was missed being counted as one (1) unexcused absence. (White-Hill Dec. ¶ 14; Decot Dec., Ex. A (Severson Dep.) at 27:11-17; Decot Dec., Ex. B at SCJ-SEV0001539)*

**No dispute.**

<u>**REPLY**</u>: Undisputed.

5

*17. Per SCJ's Waxdale Attendance Guidelines, employees received one (1) attendance point if they were late to work (by fifty-nine (59) minutes or less) or left early (by fifty-nine (59) minutes or less). (White-Hill Dec. ¶ 15; Decot Dec., Ex. A (Severson Dep.) at 27:18-24; Decot Dec., Ex. B at SCJ-SEV0001539)*

**No dispute.**

**REPLY**: Undisputed.

*18. Per SCJ's Waxdale Attendance Guidelines, employees received one (1) point for failing to call in to report an absence or tardiness at least thirty (30) minutes prior to the start of a scheduled shift and the point for a call-in violation was in addition to any points assessed for the absence or late arrival. (White-Hill Dec. ¶ 16; Decot Dec., Ex. A (Severson Dep.) at 28:2-7; Decot Dec., Ex. B at SCJ-SEV0001539)*

**No dispute.**

**REPLY**: Undisputed.

*19. Per SCJ's Waxdale Attendance Guidelines, employees received six (6) attendance points if they failed to call in and failed to report to work (i.e., were a "no call no show"). (White-Hill Dec. ¶ 16; Decot Dec., Ex. A (Severson Dep.) at 28:8-13; Decot Dec. Ex. B at SCJ-SEV0001540)*

**No dispute.**

**REPLY**: Undisputed.

*20. Under SCJ's Waxdale Attendance Guidelines, SCJ Waxdale employees who accrued too many attendance points were subject to disciplinary action. (White-Hill Dec. ¶ 18; Decot Dec., Ex. A (Severson Dep.) at 28:14-17; Decot Dec., Ex. B at SCJ-SEV0001540-1541)*

No dispute.

**REPLY**: Undisputed.

*21. Per SCJ's Waxdale Attendance Guidelines, employees who accrued ten (10) attendance points within a twelve (12)-month period were subject to an oral warning/counseling regarding attendance. (White-Hill Dec. ¶ 19; Decot Dec., Ex. A (Severson Dep.) at 28:18-22; Decot Dec., Ex. B at SCJ-SEV0001540)*

**No dispute.**

**REPLY**: Undisputed.

*22. Per SCJ's Waxdale Attendance Guidelines, employees who accrued twelve (12) attendance points within a twelve (12)-month period were subject to a written warning. (White-Hill Dec. ¶ 20; Decot Dec., Ex. A (Severson Dep.) at 28:23-25; Decot Dec., Ex. B at SCJ-SEV0001540)*

**No dispute.**

**REPLY**: Undisputed.

*23. Per SCJ's Waxdale Attendance Guidelines, employees who accrued fourteen (14) points within a twelve (12)-month period were subject to a mandatory Decision-Making Leave ("DML"), which included a one-day unpaid suspension. (White-Hill Dec. ¶ 21; Decot Dec., Ex. A (Severson Dep.) at 29:1-5; Decot Dec., Ex. B at SCJ-SEV0001540)*

**No dispute that employees who accrued fourteen (14) points within a twelve (12)-month period were subject to a DML. Dispute that a DML was mandatory in such cases. Affirmatively state that SCJ was afforded discretion to determine what discipline to assess in any given situation, as well as when to assess any such discipline. (Declaration of Forrest C. Stewart ("Stewart Dec.), Ex. A (Deposition of Timothy Corrigan ("Corrigan**

**Dep.) at 17:21-18:5); Dkt. # 25-2 at 2). Further state that on February 16, 2022, Severson had accrued seventy-four (74) attendance points, but SCJ did not immediately assess a DML against Severson. (Stewart Dec., Ex. C (Deposition of Rodney Severson (Severson Dep.), Ex. 8); Dkt. # 25-1 at 45:25-46:4). Instead, SCJ provided Severson nine (9) days to "produce documentation that would excuse these absences," before being assessed with a DML. (Stewart Dec., Ex. C (Severson Dep., Ex. 8).**

**REPLY**: Undisputed. With respect to Plaintiff's additional factual statements which go beyond the facts set forth in paragraph 23, *see* Defendant's Response to Plaintiff's Statement of Proposed Materials Facts ("Def. Fact Resp.") ¶¶ 4-6.

*24.     Per SCJ's Waxdale Attendance Guidelines, employees who accrued sixteen (16) attendance points within a twelve (12)-month period were subject to termination of employment.  (White-Hill Dec. ¶ 22; Decot Dec., Ex. A (Severson Dep.) at 29:6-9; Decot Dec., Ex. B at SCJ-SEV0001540)*

**No dispute.**

**REPLY**: Undisputed.

*25.     During Severson's employment with SCJ, attendance point balances were accessible to Waxdale employees via SCJ's time keeping system, Kronos, which all Waxdale employees were able to access and were trained to use.  (White-Hill Dec. ¶ 23)*

**No dispute that employees had access to their current attendance point balance. Dispute that those attendance point balances were always accurate or that they excluded points for absences which (a) were in the process of being reviewed for FMLA; (b) already approved as FMLA but not yet entered by SCJ's HR team; or (c) that would be**

**retroactively approved as FMLA at a later date. (Stewart Dec., Ex. A (Corrigan Dep. at 32:22-33:17).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 25.

**SCJ'S POSITIVE DISCIPLINE POLICY**

*26. During Severson's employment with SCJ, SCJ had in place and published a Positive Discipline Policy describing various levels of disciplinary action that were imposed by the Company. (White-Hill Dec. ¶ 25; Decot Dec., Ex. A (Severson Dep.) at 33:25-36:15; Decot Dec., Ex. B at SCJ-SEV0001545-1546)*

**No dispute.**

**REPLY**: Undisputed.

*27. According to the Company's Positive Discipline Policy, a DML is considered the most serious level of discipline other than termination. (White-Hill Dec. ¶ 26; Decot Dec., Ex. A (Severson Dep.) at 35:1-16; Decot Dec. Ex. B at SCJ-SEV0001545)*

**No dispute.**

**REPLY**: Undisputed.

*28. Under SCJ's Positive Discipline Policy, when an employee received a DML, the employee was required to participate in a conversation with the employee's supervisor regarding the reason for the discipline, and was placed on an unpaid leave of absence to decide whether or not the employee was willing and able to meet the Company's work standards and expectations and continue working for the Company. (White-Hill Dec. ¶ 27; Decot Dec., Ex. A (Severson Dep.) at 35:6-16; Decot Dec., Ex. B at SCJ-SEV0001545)*

**No dispute.**

**REPLY**: Undisputed.

9

*29. Per SCJ's Positive Discipline Policy, if an employee who had been given a DML decided that he/she was willing and able to meet the Company's work standards and committed to improved performance, the employee would typically create an action plan detailing how they planned to improve their behavior/performance and comply with all policies and guidelines in the future; if an employee was not willing to meet the Company's work standards and expectations, the employee's employment would be terminated by the Company. (White-Hill Dec. ¶ 28; Decot Dec., Ex. A (Severson Dep.) 35:17-36:1; Decot Dec., Ex. B at SCJ-SEV0001545)*

**No dispute that SCJ's Positive Discipline Policy requires employees who receive a DML to draft an explanation of why they want to continue to work for SCJ and an action plan stating how the employee will change their behavior and performance. Dispute that this requirement was enforced consistently in Severson's case. (Stewart Dec., Ex. A (Corrigan Dep.) at 82:3-20; Dkt. # 25-1 at 96:9-97:13, 101:5-10).**

<u>**REPLY**</u>: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 29.

*30. Under SCJ's Positive Discipline Policy, if an employee experienced another problem in any area (e.g., attendance, job performance, misconduct, violation of work rules, safety violations, non-compliance with the action plan, etc.) within twelve (12) months of the DML or while a DML action plan was in effect, the employee was subject to termination. (White-Hill Dec. ¶ 29; Decot Dec., Ex. A (Severson Dep.) at 36:6-15; Decot Dec., Ex. B at SCJ-SEV0001540, SCJ-SEV0001546)*

**No dispute.**

<u>**REPLY**</u>: Undisputed.

## SCJ'S FMLA POLICY

*31. During Severson's employment with SCJ, SCJ had in place and published a Family and Medical Leave of Absence policy ("FMLA Policy") (BEN 023) which was effective as of July 2023, was available to employees on SCJ's online MyHR portal, and required employees requesting FMLA leave to contact SCJ's third-party FMLA administrator, Prudential, to request FMLA leave. (White-Hill Dec. ¶ 30; Decot Dec., Ex. A (Severson Dep.) at 36:19-37:12, 38:3-23; Decot Dec., Ex. C)*

**No dispute.**

**REPLY**: Undisputed.

*32. Per SCJ's FMLA Policy, effective July 1, 2023, Waxdale employees, including Severson, were required to contact Prudential to request leave at least thirty (30) days prior to the start of a foreseeable FMLA leave and were required to contact Prudential to request leave as soon as practicable if they were unable to request leave prior to the start date of a leave. (White-Hill Dec. ¶ 31; Decot Dec., Ex. A (Severson Dep.); Decot Dec., Ex. C at SCJ-SEV0001571)*

**No dispute.**

**REPLY**: Undisputed.

*33. There were multiple ways for employees to contact Prudential to request leave and/or report an absence from work including via telephone, online, or using a QR code on a mobile device. (White-Hill Dec. ¶ 32; White-Hill Dec., Ex. A; Decot Dec., Ex. A (Severson Dep.) at 38:25-39:14; Decot Dec., Ex. D at SCJ-SEV0001755; Decot Dec., Ex. E)*

**No dispute.**

**REPLY**: Undisputed.

11

*34.	Per SCJ's FMLA Policy, once an employee contacted Prudential to request FMLA leave, Prudential provided the employee with the paperwork needed to file their claim, along with a notice regarding their rights and responsibilities and a deadline to submit the completed paperwork.  (White-Hill Dec. ¶ 33; Decot Dec., Ex. A (Severson Dep.) at 38:3-23; Decot Dec., Ex. C at SCJ-SEV0001571)*

**No dispute.**

**REPLY**:  Undisputed.

*35.	Per SCJ's FMLA Policy, Prudential reviewed any information submitted by the employee and informed the employee regarding the determination on leave status and the amount of any time that would be counted against the employee's leave entitlement, if known. (White-Hill Dec. ¶ 34; Decot Dec., Ex. A (Severson Dep.) at 38:3-23; Decot Dec., Ex. C at SCJ-SEV0001571)*

**No dispute that the Policy provides that Prudential will inform the employee regarding the determination of their leave status along with the amount of time counted against their leave entitlement. Dispute that the cited materials provide that Prudential will review "any information" submitted by the employee. (Dkt. # 25-3 at 7).**

**REPLY**:	Undisputed in material part.

*36.	Per SCJ's FMLA Policy, employees were required to immediately contact Prudential if they disputed a leave determination.  (White-Hill Dec. ¶ 35; Decot Dec., Ex. A (Severson Dep.) at 38:3-23; Decot Dec., Ex. C at SCJ-SEV0001571)*

**No dispute that the FMLA Policy states that employees "should" immediately contact Prudential if they dispute a determination. Dispute that the FMLA Policy states that employees "were required" to do so. (Dkt. # 25-3 at 7).**

**REPLY**: Undisputed in material part.

**SEVERSON'S EMPLOYMENT WITH SCJ**

*37. SCJ hired Plaintiff Rodney Severson ("Severson") on October 31, 2005 as production employee at its Waxdale facility. (White-Hill Dec. ¶ 36; Decot Dec., Ex. A (Severson Dep.) at 19:15-25)*

**No dispute.**

**REPLY**: Undisputed.

*38. As a production employee at SCJ's Waxdale facility, Severson was subject to SCJ's Work Rules (PERS 015), the Waxdale Attendance Guidelines, the Waxdale Call-In Procedure, the Positive Discipline policy, and the Company's FMLA Policy (BEN 023), was familiar with such policies, and was required to comply with such policies during his employment. (White-Hill Dec. ¶ 37; Decot Dec., Ex. A (Severson Dep.) at 26:1-6, 34:1-36:15, 38:3-23; Decot Dec. Exs. B-C)*

**No dispute that Severson was subject to the policies discussed, or that he was familiar with the Positive Discipline Policy. Dispute that the cited materials demonstrate that Severson was "familiar" with SCJ's Work Rules (PERS 015), the Waxdale Attendance Guidelines, the Waxdale Call-In Procedure, and the Company's FMLA Policy (BEN 023). (Dkt. # 25-1 at 26:1-6, 34:1-36:15, 38:3-23).**

**REPLY**: Undisputed in material part. *See also*, Decot Dec., Ex. A (Severson Dep.) at 26:8-27:24 (stating that he "recognized" what the Attendance Guidelines said and he believed they were consistent with his recollection) and 33:15-24 (indicating that the call-in procedure was consistent with the procedure during his employment).

*39. At the times relevant to Severson's claim, Severson's direct supervisor was Sr. Analyst, Manufacturing Operations Tim Corrigan and Severson's second-level manager*

13

*was Waxdale Area Manager – Materials & Shipping Bruce "Rio" Burton.  (White-Hill Dec. ¶ 38; Decot Dec., Ex. A (Severson Dep.) at 25:7-20)*

**No dispute.**

**REPLY**:　　Undisputed.

<u>**Severson's History of Attendance Violations and Related Discipline**</u>

*40.　　On November 9, 2018, SCJ issued Severson a documented Oral Reminder for frequent absenteeism based on his full or partial day unexcused absences on December 4, 5, 9, and 14 in 2017 and on May 7 and 8 and July 6, 7, and 8 in 2018.  (White-Hill Dec. ¶ 39; Decot Dec., Ex. A (Severson Dep.) at 41:14-20; Decot Dec., Ex. F)*

**No dispute.**

**REPLY**:　　Undisputed.

*41.　　On August 14, 2019, SCJ issued Severson a Written Reminder for frequent absenteeism based on his unexcused absences on May 15, 16 and 17 and July 6, 7, and 8 in 2019.  (White-Hill Dec. ¶ 40; Decot Dec., Ex. A (Severson Dep.) at 43:12-45:10; Decot Dec., Ex. G)*

**No dispute.**

**REPLY**:　　Undisputed.

<u>**Severson's Pre-2023 FMLA Leave Use and Approvals**</u>

*42.　　In approximately 2009, Severson requested and was approved for FMLA leave in connection with a toe surgery.  (White-Hill Dec. ¶ 41; Decot Dec., Ex. A (Severson's Dep.) at 51:18-52:7)*

**No dispute.**

**REPLY**:　　Undisputed.

14

*43.     In approximately 2017, Severson requested and was approved for FMLA leave to attend rehab.  (White-Hill Dec. ¶ 42; Decot Dec., Ex. A (Severson's Dep.) at 51:18-52)*

**No dispute.**

**REPLY**:     Undisputed.

*44.     Severson returned to work at SCJ following his 2009 FMLA leave for toe surgery and his 2017 FMLA leave for rehab and was not disciplined in connection with such leaves. (White-Hill Dec. ¶ 43; Decot Dec., Ex. A (Severson Dep.) at 51:18-52:7)*

**No dispute.**

**REPLY**:     Undisputed.

*45.     In approximately August 2021, Severson was again absent from work in connection with a stay in rehab.  (White-Hill Dec. ¶ 44; Decot Dec., Ex. A (Severson Dep.) at 45:14-46:8)*

**No dispute.**

**REPLY**:     Undisputed.

*46.     When Severson submitted an FMLA certification form documenting his need for FMLA leave on the dates he was in rehab in 2021, SCJ excused Severson's rehab-related absences based on the FMLA documentation Severson provided.  (White-Hill Dec. ¶ 45; Decot Dec., Ex. A (Severson Dep.) at 46:5-50:13)*

**No dispute.**

**REPLY**:     Undisputed.

*47.     Severson returned to work at SCJ following his 2021 FMLA leave for rehab and was not disciplined in connection with such leave. (White-Hill Dec. ¶ 46; Decot Dec., Ex. A (Severson Dep.) at 51:18-52:23)*

**No dispute.**

**REPLY**: Undisputed.

**Severson's February 2023 Request for FMLA Leave to Care for His Mother**

*48.* *On February 6, 2023, Severson informed SCJ's Leave Team that he needed FMLA leave beginning on February 9, 2023 and ending on February 10, 2023 to care for his parent due to his parent's serious health condition. (White-Hill Dec. ¶ 47; Decot Dec., Ex. A (Severson Dep.) at 53:15-54:23; Decot Dec., Ex. H)*

**No dispute.**

**REPLY**: Undisputed.

*49.* *On February 13, 2023, SCJ provided Severson with a Notice of Eligibility and Rights and Responsibilities – FMLA Leave indicating that Severson was eligible for FMLA leave but stating that, in order to determine whether Severson's absences qualified as FMLA leave, Severson was required to provide a completed certification of health care provider form sufficient to support Severson's request for leave by March 13, 2023. (White-Hill Dec. ¶ 48; Decot Dec., Ex. A (Severson Dep.) at 53:15-55:21; Decot Dec., Ex. H)*

**No dispute.**

**REPLY**: Undisputed.

*50.* *The February 13, 2023 Notice of Eligibility and Rights and Responsibilities – FMLA Leave provided to Severson also stated that, if Severson's requested leave was FMLA-qualifying, Severson was also required to call in to report his absences as required by SCJ's attendance policy and that failure to comply with SCJ's call-in requirements would result in attendance policy violations, delay or denial of FMLA leave, and possible*

*disciplinary action up to and including termination. (White-Hill Dec. ¶ 49; Decot Dec., Ex. A (Severson Dep.) at 55:22-56:6; Decot Dec., Ex. H)*

**No dispute.**

**REPLY**: Undisputed.

*51. The February 13, 2023 FMLA Family Packet of documents provided by SCJ to Severson also contained a blank Certification of Health Care Provider for Family Member's Serious Health Condition form for Severson to have completed by a healthcare provider and returned by March 13, 2023. (White-Hill Dec. ¶ 50; Decot Dec., Ex. A (Severson Dep.) at 56:7-20; Decot Dec., Ex. H)*

**No dispute.**

**REPLY**: Undisputed.

*52. The February 13, 2023 FMLA Family Packet of documents provided by SCJ to Severson also contained a cover letter providing, among other things, that:*

- *"Time off under FMLA cannot be counted as missed time; therefore, if eligible, the FMLA can protect you from discipline for your absence;"*

- *The Certification of Health Care Provider for Family Member's Serious Health Condition form was required to be completed and returned within 30 days;*

- *If the completed Certification of Health Care Provider for Family Member's Serious Health Condition form was not returned within 30 days, Severson would not be eligible for protection under the FMLA and could not, at any later date, claim that his absences should have been*

covered under the FMLA such that discipline imposed on him should be rescinded;

- For chronic or intermittent conditions, an employee must submit the initial Certification of Health Care Provider for Family Member's Serious Health Condition form within 30 days of the first day of absence and then submit a new form every 6 months if the condition persists;

- During leave, Severson needed to continue to follow the normal reporting requirements to report his absences, including calling in to report an absence prior to the beginning of a shift;

- FMLA leaves for family members needed to be reported to Severson's manager and not to the Medical Center;

- Severson was required to notify the Leave Team of the time missed within five calendar days of return from the FMLA usage and, if he did not provide timely notification and did not reference the specific FMLA condition for which he was absent, he would not be eligible for protection under the FMLA; and

- If he had any questions regarding his rights and responsibilities under the FMLA, Severson was to contact the Leave Team.

(White-Hill Dec. ¶ 51; Decot Dec., Ex. A (Severson Dep.) at 56:21-59:5; Decot Dec., Ex. H)

**No dispute.**

**REPLY**: Undisputed.

53. *Severson admitted that he received the February 13, 2023 correspondence from SCJ stating that, for a chronic or intermittent condition, he needed to submit an initial*

*certification form within thirty days and then submit a new medical certification form after six months if the health conditions persists. (Decot Dec., Ex. A (Severson Dep.) at 177:18-178:2; Decot Dec., Ex. H)*

**No dispute that the February 13, 2023 FMLA Family Packet contained the above-mentioned certification instructions. Dispute any claim or implication that any separate February 13, 2023 correspondence containing such instructions has been entered into the evidentiary record. (*See generally* Dkt. # 25, 26, 27, 28).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 53.

54. *Severson returned a completed Certification of Health Care Provider for Family Member's Serious Health Condition form dated March 13, 2023 to SCJ. (White-Hill Dec. ¶ 52; Decot Dec., Ex. A (Severson Dep.) at 60:10-23; Decot Dec., Ex. I)*

**No dispute.**

**REPLY**: Undisputed.

55. *Dr. Michael Zeihen (and/or his staff) completed the health care provider section of the Certification of Health Care Provider for Family Member's Serious Health Condition form dated March 13, 2023 and provided information related to Severson's mother who had ovarian cancer. (Decot Dec., Ex. A (Severson Dep.) at 61:21-62:20, 63:25-64:4, 86:23-87:3; Decot Dec., Ex. I; Decot Dec., Ex. DD (Deposition of Dr. Michael Zeihen ("Zeihen Dep.") at 11:15-13:22; Decot Dec., Ex. EE)*

**No dispute.**

**REPLY**: Undisputed.

19

*56. The Certification of Health Care Provider for Family Member's Serious Health Condition form dated March 13, 2023 indicated that Severson's mother's condition began on February 3, 2023 and Severson's mother would require follow-up treatments and would require care on an intermittent or reduced schedule basis beginning from March 2, 2023 through a date to be determined. (White-Hill Dec. ¶ 53; Decot Dec., Ex. A (Severson Dep.) at 62:21-63:24; Decot Dec., Ex. I)*

**No dispute.**

**REPLY**: Undisputed.

*57. Based on the Certification of Health Care Provider for Family Member's Serious Health Condition form dated March 13, 2023, SCJ approved Severson to take FMLA leave on intermittent basis to care for his mother for a period of six months from February 9, 2023 (the first date for which Severson had requested leave) through August 9, 2023. (White-Hill Dec. ¶ 54; Decot Dec., Ex. A (Severson Dep.) at 63:25-64:22)*

**Dispute that the cited materials demonstrate that SCJ only approved Severson's FMLA claim through August 9, 2023, or that SCJ provided Severson with any notice of this date range. (Declaration of Rodney Severson ("Severson Dec."), ¶ 8-9). Affirmatively state that the cited materials only indicate that Severson's claim was approved beginning on February 9, 2023. (Dkt. # 26, ¶ 54; Dkt. # 25-1 at 63:25-64:22).**

**REPLY**: Undisputed. *See* Dkt. 27-1 (Corrigan Dec., Ex. A) (indicating that the begin date for the approved leave was February 9, 2023 and the end date was August 9, 2023).

<u>**Severson's March 2023 Request for FMLA Leave for Himself**</u>

*58.     In or about March 2023, Severson also requested intermittent FMLA leave for his own migraine flare-ups.  (White-Hill Dec. ¶ 55; Decot Dec., Ex. A (Severson Dep.) at 64:23-25, 66:10-67:3; Decot Dec., Ex. J)*

**No dispute.**

**REPLY**:     Undisputed.

*59.     Severson was absent from work on February 24 and 27, 2023 and March 8, 10, and 20, 2023 and, on March 23, 2023, then Associate Manager, Field HR, Waxdale Monica Bliss reached out to Severson via email to determine if any of the absences were related to Severson's requests for FMLA and to advise Severson to report the time off as FMLA if the absences were FMLA-related.  (Decot Dec., Ex. A (Severson Dep.) at 79:21-80:10; Decot Dec., Ex. L; Decot Dec., Ex. Y (Deposition of Monica Bliss ("Bliss Dep.") at 10:24-12:14)*

**Dispute that the referenced emails mention a March 23, 2023 absence.  (Dkt. #25-12).  Otherwise, no dispute.**

**REPLY**: Undisputed.  The March 23, 2023 date refers to the date Monica Bliss reached out to Severson via email.  See also, the Declaration of Monica Bliss ("Bliss Dec.") ¶ 5.

*60.     On March 30, 2023, Severson responded to Bliss and indicated that the absences were for a separate case related to Severson's own health condition (migraines), not his parent's health condition.  (Decot Dec., Ex. A (Severson Dep.) at 80:11-82:19; Decot Dec., Ex. L; Decot Dec., Ex. Y (Bliss Dep.) at 12:15-13:11)*

**No dispute.**

**REPLY**:     Undisputed.

61. *Based on the Certification of Health Care Provider for Employee's Serious Health Condition form dated April 19, 2023 that was provided to SCJ in connection with Severson's request for FMLA for his own health condition, SCJ approved Severson to take FMLA leave on intermittent basis for his migraine flare-ups for the dates listed in the April 19, 2023 certification form during the period from March 8, 2023 through April 4, 2023 – namely March 8, 10, 20, 24, 27, and 28, 2023 and April 4, 2023. (Declaration of Tim Corrigan ("Corrigan Dec.") ¶ 6; Corrigan Dec., Ex. A; Decot Dec., Ex. A (Severson Dep.) at 64:23-25, 71:15-74:16; Decot Dec., Ex. K)*

**No dispute.**

**REPLY**: Undisputed.

62. *Severson's absences on February 24 and 27, 2023, were not approved as FMLA leave because they were not dates covered by the April 19, 2023 Certification of Health Care Provider for Employee's Serious Health Condition form provided by Severson to SCJ and Severson agrees that it made sense that such absences would be denied as FMLA covered. (Decot Dec., Ex. A (Severson Dep.) at Decot Dec., Ex. A (Severson Dep.) at 64:23-25, 71:15-74:16, 83:10-84:18; Decot Dec., Ex. K; Decot Dec., Ex. L)*

**No dispute.**

**REPLY**: Undisputed.

**Severson's April and May 2023 Absences and SCJ's Directions Regarding Reporting of FMLA-Related Absences**

63. *Severson was absent from work on April 7, 10, 11 and 17, 2023 and May 16, 17, and 18, 2023. (White-Hill Dec. ¶ 57; Decot Dec., Ex. A (Severson Dep.) at 84:20-85:13; Decot Dec., Ex. M)*

**No dispute.**

**REPLY**: Undisputed.

*64. On May 24, 2023, Bliss reached out to Severson via email to determine if any of the absences were related to Severson's requests for FMLA and advised Severson that, if any of his absences on the listed dates were related to an approved FMLA leave, Severson needed to report those dates to SCJ's Leave Team within five days and Bliss directed Severson to inform the Leave Team as soon as possible if he believed any of the dates were FMLA covered. (Decot Dec., Ex. A (Severson Dep.) at 84:20-85:13; Decot Dec., Ex. M)*

**No dispute.**

**REPLY**: Undisputed.

*65. On June 5, 2023, SCJ issued Severson a Written Warning for Attendance based on Severson's accrual of 12 points in connection with his absences on February 24 and 27 and April 7, 10, 11, and 17, 2023, which were not covered by any FMLA certification Severson had provided to SCJ and were not identified by Severson as relating to his approved FMLA leave to care for his mother. (White-Hill Dec. ¶ 58; Decot Dec., Ex. A (Severson Dep.) at 79:21-80:10, 87:16-90:3; Decot Dec., Ex. N; Decot Dec., Ex. Y (Bliss Dep.) at 20:12-25)*

**Dispute the claim that Severson did not identify those dates as relating to FMLA leave, as he did in fact do so on October 12, 2023. (Dkt. # 25-29). No dispute that Severson had not identified these dates as FMLA-protected prior to the imposition of the October 2023 DML.**

**REPLY**: Undisputed. As of June 5, 2023 date referenced in paragraph 65, there is no dispute that Plaintiff had not identified the referenced dates as relating to his FMLA leaves.

*66.     On June 8, 2023, Severson responded to Bliss' May 24, 2023 email and indicated that his absences on May 16, 17, and 18, 2023 were related to his FMLA for his parent; however, Severson did not indicate that his absences on April 7, 10, 11, or 17, 2023 were FMLA-related.  (Decot Dec., Ex. A (Severson Dep.) at 85:17-21; Decot Dec., Ex. N)*

**Dispute that Severson never identified April 7, 10, 11, or 17, 2023 as relating to FMLA leave, since he did so on October 12, 2023. (Dkt. # 25-29). No dispute that he did not do so on June 8, 2023.**

**REPLY**:     Undisputed.  The cited email demonstrates that Plaintiff did not indicate that his absences on April 7, 20, 11, or 17, 2023 were FMLA-related when he responded to Bliss's email on June 8, 2023.

**SCJ's July 1, 2023 Transition to Prudential for FMLA Leave Management
and Severson's Subsequent Absences**

*67.     On July 1, 2023, SCJ transitioned the claim management for FMLA leaves to a third-party administrator, Prudential.  (White-Hill Dec. ¶ 59; Decot Dec., Ex. A (Severson Dep.) at 92:16-94:23; Decot Dec., Ex. O)*

**No dispute.**

**REPLY**:     Undisputed.

*68.     On July 12, 2023, Severson contacted SCJ's Leave Team and indicated that he was absent on July 5, 6, 10, and 11, 2023 to care for his mother.   (Decot Dec., Ex. A (Severson Dep.) at 92:16-94:23; Decot Dec., Ex. O)*

**No dispute.**

**REPLY**:     Undisputed.

24

69. On July 13, 2023, SCJ's Leave Team responded to Severson and advised him about the transition to Prudential effective July 1, 2023 and informed him how to contact Prudential. (Decot Dec., Ex. A (Severson Dep.) at 92:16-94:23; Decot Dec., Ex. O)

**No dispute.**

**REPLY**: Undisputed.

70. Severson was also subsequently absent from work on the following dates:

- July 14, 17, 24, and 26, 2023;

- August 4, 8, and 28, 2023;

- September 1, 5, 8, 15, and 29, 2023; and

- October 6, 9, and 10, 2023.

**No dispute that all of these dates appeared on Severson's October 2023 DML. No dispute that Severson was indeed absent for many of these dates. (Severson Dec., Ex. A). Affirmatively state that SCJ provided no citation for this proposed fact, and therefore dispute the accuracy of its statement that Severson was necessarily absent on every single date listed.**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 70. *See also* Bliss Dec. ¶ 12.

71. Prior to October 12, 2023, Severson did not report any of his absences during the period from July 14, 2023 through October 10, 2023 to Prudential as FMLA-related absences. (Declaration of Brian Glaser ("Glaser Dec.") ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002216-SCJ-SEV0002230; Decot Dec., Ex. A (Severson Dep.) at 92:16-94:23; Decot Dec., Ex. O)

**No dispute that Severson did not successfully report his absences to Prudential prior to October 12, 2023. Dispute that this was due to Severson failing to attempt to do so, rather than the significant issues Severson faced in reporting his absences to Prudential. (Dkt. # 25-1 at 77:4-12, 78:8-15, 91:2-3, 100:9-23).**

**REPLY**:     Undisputed.    Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 71.

**Severson's October 12, 2023 DML and Report of Absences to Prudential**

72.     *As of October 12, 2023, Severson had accumulated 54 attendance points based on his unexcused absences.  (Decot Dec., Ex. A (Severson Dep.) at 92:16-94:23; Decot Dec., Ex. O; (Bliss Dep.) at 23:12-24:10; Decot Dec., Ex. AA)*

**Dispute that the absences leading to the 54 attendance points were in fact unexcused or unprotected by FMLA. (Dkt. # 25-1 at 97:12-14; Dkt. # 25-25 at 30:22-31:2, 33:9-34:7; Stewart Dec., Ex. D (Bliss Dep. Ex. 21); Stewart Dec., Ex. B (Bliss Dep. Ex. 9). No dispute that SCJ's attendance system assessed 54 attendance points against Severson.**

**REPLY**:     Undisputed.    Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 72.

73.     *On October 12, 2023, Tim Corrigan met with Severson and issued Severson a Decision Making Leave for Attendance based on Severson's accrual of 54 points in connection with absences which had not yet been reported to Prudential or approved for FMLA leave.  (Decot Dec., Ex. A (Severson Dep.) at 95:17-96:8; Decot Dec., Ex. P; Decot Dec., Ex. Y (Bliss Dep.) at 23:12-24:10; Decot Dec., Ex. AA)*

**No dispute.**

**REPLY**:     Undisputed.

*74.	The October 12, 2023 DML issued to Severson (i) highlighted certain dates that Severson had previously reported to SCJ's Leave Team as potentially FMLA-related but had not yet reported to Prudential (as instructed by the Leave Team) to get them excused as FMLA-covered, (ii) advised Severson that if he believed that any of the dates reflected in the DML were FMLA-covered, he needed to notify Prudential so that Prudential could review the absences and make an appropriate FMLA determination, and (iii) informed Severson that any dates that were designated as FMLA leave would be removed from the DML.  (Decot Dec., Ex. A (Severson Dep.) at 96:15-97:1; Decot Dec., Ex. P; Decot Dec., Ex. Y (Bliss Dep.) at 24:25-25:24; Decot Dec., Ex. AA)*

**No dispute as to the substance of the DML. No dispute that as of October 12, 2023, Severson had not successfully reported the absences to Prudential. Dispute that this was due to Severson failing to attempt to do so, rather than the significant issues Severson faced in reporting his absences to Prudential. (Dkt. # 25-1 at 77:4-12, 78:8-15, 91:2-3, 100:9-23).**

**REPLY**:	Undisputed.   Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 74.

*75.	Even if the dates highlighted on the October 12, 2023 DML had been excluded from the DML as pending, as of October 12, 2023, Severson still had accumulated 36 other attendance points and was well over the 14 point-level at which DMLs were issued under the Waxdale Attendance Guidelines.  (Decot Dec., Ex. Y (Bliss Dep.) at 24:25-25:19; Decot Dec., Ex. AA)*

**No dispute that SCJ had assessed 36 other attendance points in addition to those highlighted by Bliss. Dispute that this calculation accurately reflected absences that**

27

**were not protected by FMLA, as, Severson subsequently reported all such absences as being protected by FMLA and Prudential approved all dates on the DML prior to August 9, 2023. (Dkt. # 25-16; Dkt. # 25-23; Dkt. # 25-29).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 75.

76. *On October 12, 2023, at 6:05 p.m., Severson contacted Prudential to report all of the absences listed in the October 12, 2023 DML as FMLA leave related to care of his mother and Prudential sent Severson an email summarizing the dates reported and instructions as to how Severson could check the status of his absence request or report more time off. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002216-SCJ-SEV0002230; Decot Dec., Ex. A (Severson Dep.) at 99:14-25, 107:14-109:25; Decot Dec., Ex. Q)*

**No dispute.**

**REPLY**: Undisputed.

77. *After speaking with Prudential, Severson spoke with Corrigan and told Corrigan that he had spoken with Prudential and discussed some documentation that was needed and he would be working on getting paperwork for both the period from February 2023 – August 2023, if needed, and a new certification for the period from August 2023 through then-present date. (Decot Dec., Ex. Y (Bliss Dep.) at 29:18-30:21; Decot Dec., Ex. BB)*

**No dispute.**

**REPLY**: Undisputed.

78. *On October 12, 2023, Corrigan forwarded Bliss the email from Prudential listing the various dates for which Severson had requested FMLA leave to care for a parent. (Decot Dec., Ex. Y (Bliss Dep.) at 33:8-34:10; Decot Dec., Ex. CC)*

**No dispute.**

**REPLY**: Undisputed.

*79. On October 13, 2023, Bliss forwarded the October 12, 2023 email from Prudential to SCJ's Leave Team and noted that certain of the absences reported by Severson to Prudential on October 12, 2023 as leave to care for a family member had previously been reported by Severson to the Leave Team as dates on which he was personally sick. (Decot Dec., Ex. Y (Bliss Dep.) at 34:14-21; Decot Dec., Ex. CC)*

**Dispute that Bliss highlighted Severson's reports to SCJ's Leave Team. Affirmatively state that Bliss highlighted the way in which SCJ's *Medical Center* recorded Severson's report. (Dkt. # 25-29; Dkt. # 25-13).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 79. *See also*, Bliss Dec. ¶ 19.

*80. Bliss forwarded the October 12, 2023 email from Prudential to SCJ's Leave Team because the reason Severson provided to Prudential for his absences on February 24, February 27, April 7, April 10, April 11, and April 17, 2023 (i.e., FMLA for family member's care) differed from the reason Severson had previously provided when he initially reported the absences to the Medical Center and in his March 2023 email to Bliss (i.e., sick self/migraines/own condition). (Decot Dec., Ex. Y (Bliss Dep.) at 34:22-35:10; Decot Dec., Ex. CC)*

**No dispute as to the content of Bliss's email. Dispute any implicit claim as to the accuracy of Bliss's claim regarding Severson's reporting of the reasoning for his absences, as none of the cited materials establish the accuracy thereof.**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 80. *See also*, Bliss Dec. ¶ 20.

81. *In her October 13, 2023 email to the Leave Team, Bliss also noted that, on May 24, 2023, she had previously instructed Severson to report the April 7, 10, 11, and 17 dates to the Leave Team as soon as possible if he believed that those dates were FMLA-covered. (Decot Dec., Ex. Y (Bliss Dep.) at 34:14-21; Decot Dec., Ex. CC)*

**No dispute.**

**REPLY**: Undisputed.

82. *On October 13, 2023, Prudential sent Severson a letter (i) notifying him that Prudential was reviewing the information it had on file and would likely have the necessary information in one week, (ii) that it was Severson's responsibility to report all absences to Prudential, and (iii) how to contact Prudential. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002233-SCJ-SEV0002237; Decot Dec., Ex. A (Severson Dep.) at 110:7-111:22; Decot Dec., Ex. R)*

**No dispute.**

**REPLY**: Undisputed.

### Prudential's Repeated Requests for Medical Certification and Severson's Failure to Provide Recertification

83. *On October 17, 2023, Prudential sent Severson a letter instructing him to provide a completed copy of the Care of a Family Member Medical Certification enclosed with the letter by November 16, 2023 and notifying him that "failure to submit the required documentation may result in the delay or denial of [his] leave request." (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002255-SCJ-SEV0002267; Decot Dec., Ex. A (Severson Dep.) at 111:25-112:23, Ex. 22)*

**No dispute.**

**REPLY**: Undisputed.

*84. On November 3, 2023, Dr. Michael Zeihen (and/or his staff) completed the health care provider section of the Certification of Health Care Provider for Family Member's Serious Health Condition form dated November 3, 2023 and the information provided was information related to Severson's father. (Decot Dec., Ex. A (Severson Dep.) at 61:21-62:20, 63:25-64:4, 86:23-87:3; Decot Dec., Ex DD (Zeihen Dep. at 14:24-16:17; Decot Dec., Ex. FF)*

**No dispute.**

**REPLY**: Undisputed.

*85. The November 3, 2023 Certification of Health Care Provider for Family Member's Serious Health Condition form related to Severson's father contained an "X" in the box for intermittent leave but did not contain any start date or end date for the intermittent leave or include any description of the relevant medical facts supporting the need for leave. (Decot Dec., Ex. A (Severson Dep.) at 125:1-128:5, Ex. 27; Decot Dec., Ex DD (Zeihen Dep. at 14:24-16:17; Decot Dec., Ex. FF)*

**No dispute that the form did not include dates in the intermittent leave section or a description of the relevant medical facts. Dispute that this error made the form substantially incomplete, since the completed form contained the dates "11/6/23–11/6/24" next to the box for a "single continuous absence period," directly above the box for "intermittent absence" dates. (Dkt. # 25-32). Otherwise, no dispute.**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 85.

*86. On November 7, 2023, Prudential sent Severson a letter (i) advising Severson that the medical certification form that had been provided was incomplete, (ii) describing the information that was incomplete on the previously provided certification form, (iii) enclosing copies of a blank certification form and the incomplete certification for reference, and (iv) directing Severson to contact the health care provider to obtain the missing information and return the complete certification form by November 23, 2023.  (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002306-SCJ-SEV0002319; Decot Dec., Ex. A (Severson Dep.) at 113:14-112:23; Decot Dec., Ex. T)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

<u>**REPLY**</u>:      Undisputed.   Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 86.  Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment.  *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

*87. Prudential's November 7, 2023 letter to Severson specifically noted that, among other things, the following information was incomplete and needed to be provided: the expected absence start and end dates in the Intermittent Absence Details section on page 3 of the certification and a description of the medical facts sufficient to support the need for leave.*

*(Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002306-SCJ-SEV0002307; Decot Dec., Ex. A (Severson Dep.) at 113:14-112:23; Decot Dec., Ex. T)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**<u>REPLY</u>**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 87. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

*88.	Prudential's November 7, 2023 letter to Severson indicated that Severson's leave request "may be denied if the completed certification form is not received by November 23, 2023."  (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002306; Decot Dec., Ex. A (Severson Dep.) at 113:14-112:23; Decot Dec., Ex. T)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**<u>REPLY</u>**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 88. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at

*1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

*89.      On December 5, 2023, Prudential sent Severson another letter (i) advising Severson that the medical certification form that had previously been provided was incomplete, (ii) describing the information that was incomplete on the previously provided certification form, (iii) enclosing copies of a blank certification form and the incomplete certification for reference, and (iv) directing Severson to contact the health care provider to obtain the missing information and return the complete certification form by December 12, 2023.  (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002375-SCJ-SEV0002388; Decot Dec., Ex. A (Severson Dep.) at 116:21-118:14; Decot Dec., Ex. U)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**:      Undisputed.   Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 89.  Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment.  *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

*90.      Prudential's December 5, 2023 letter to Severson specifically noted that, among other things, the following information was incomplete and needed to be provided: the*

*expected absence start and end dates in the Intermittent Absence Details section on page 3 of the certification and a description of the medical facts sufficient to support the need for leave. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002375-SCJ-SEV0002376; Decot Dec., Ex. A (Severson Dep.) at 116:21-118:14; Decot Dec., Ex. U)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**<u>REPLY</u>**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 90. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

91. *Prudential's December 5, 2023 letter to Severson also indicated that the medical certification received was for Severson's father and Prudential needed a certification for Severson's mother. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002375; Decot Dec., Ex. A (Severson Dep.) at 118:15-22; Decot Dec., Ex. U)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**<u>REPLY</u>**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 91. Severson's inability to recall

whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

92. *Prudential's December 5, 2023 letter to Severson also instructed Severson to ask the health care provider to sign the certification form and supply his or her name, area of specialty, phone number, and address. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002376; Decot Dec., Ex. A (Severson Dep.) at 118:25-119:6; Decot Dec., Ex. U)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 92. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

93. *The Certification of Health Care Provider for Family Member's Serious Health Condition form dated March 13, 2023 was the only certification form Severson ever provided to SCJ or Prudential regarding a need for leave to care for his mother. (White-Hill Dec. ¶ 61; Decot Dec., Ex. A (Severson Dep.) at 142:20-144:8)*

**No dispute that the November 3, 2023 certification paperwork did not include Severson's mother's name. Dispute that the certification was not "regarding" a need for leave to care for his mother, since Severson intended for the recertification paperwork to relate to his mother, not his father. (Severson Dec., ¶ 20-22).**

**REPLY**:    Undisputed.    Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 93.  *See also*, Def. Fact. Resp. ¶ 13.

94.    *After the initial six-month period covered by the March 13, 2023 certification (i.e., February 9, 2023 through August 9, 2023), Severson did not ever recertify his need for leave or provide another Certification of Health Care Provider for Family Member's Serious Health Condition form relating to his mother's condition despite Prudential's repeated requests for recertification in connection with Severson's absences for August 28, 2023 and after.  (White-Hill Dec. ¶ 62; Decot Dec., Ex. A (Severson Dep.) at 142:20-144:8)*

**No dispute that Severson did not provide any certification for leave specifically naming his mother other than the March 13, 2023 certification. No dispute that the November 3, 2023 certification paperwork did not include Severson's mother's name. Dispute that Severson's claim was only approved for six (6) months. (Severson Dec., ¶ 8). Dispute that, prior to his October 2023 DML, either SCJ or Prudential ever requested recertification paperwork from Severson. (Severson Dec., ¶ 9). Dispute that the November 3, 2023, certification did not relate to his mother's condition, since Severson intended for the recertification paperwork to relate to his mother, not his father. (Severson Dec., ¶ 20-22). Further dispute that Severson received or read any of Prudential's requests for modified recertification paperwork following his submission**

**of the November 3, 2023 certification paperwork. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 93. *See also*, Corrigan Dec. ¶ 6; Corrigan Dec., Ex. A; Def. Fact. Resp. ¶¶ 12, 13, 32-35, 39, 41.

*95. The incomplete Certification of Health Care Provider for Family Member's Serious Health Condition form dated November 3, 2023 was the only certification form ever provided to SCJ or Prudential regarding Severson's father. (Decot Dec., Ex. A (Severson Dep.) at 86:23-87-6)*

**Dispute that the certification was incomplete. (*See* Dkt. # 25-32 at 7). Affirmatively state that the certification had sufficient information for Prudential to confirm Severson's need and eligibility for FMLA leave. (*Id*.). Otherwise, no dispute.**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 95.

### Prudential's December 2023 Decision on Severson's Requested Leave

*96. On December 20, 2023, Prudential sent Severson a letter approving FMLA leave for all absences through August 8, 2023. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002480-SCJ-SEV0002484; Decot Dec., Ex. A (Severson Dep.) at 122:13-123:9; Decot Dec., Ex. W)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 96. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

97. *Prudential's December 20, 2023 letter also listed twenty dates beginning on August 28, 2023 and running through December 12, 2023 which had been denied as FMLA-qualifying due to insufficient medical support. (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002480-SCJ-SEV0002484; Decot Dec., Ex. A (Severson Dep.) at 123:10-21; Decot Dec., Ex. W)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 97. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

98.	The twenty dates in Prudential's December 20, 2023 letter for which FMLA leave had been denied due to insufficient medical support included the following dates, which Severson had indicated were for time off to care for his mother and all of which occurred after the six-month leave period (i.e., February 8, 2023 through August 8, 2023) for which SCJ had previously approved FMLA leave for Severson to care for his mother based on the original medical certification dated March 13, 2023:

- August 28, 2023
- September 1, 2023
- September 5, 2023
- September 8, 2023
- September 15, 2023
- September 29, 2023
- October 6, 2023
- October 9, 2023
- October 20, 2023
- October 31, 2023
- November 3, 2023
- November 6, 2023
- November 9, 2023
- November 16, 2023
- November 22, 2023
- November 27, 2023
- December 1, 2023

- December 4, 2023

- December 8, 2023

- December 11, 2023

(Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002480-SCJ-SEV0002484; Corrigan Dec. ¶ 7; Ex. B; Decot Dec., Ex. A (Severson Dep.) at 123:22-124:3; Decot Dec., Ex. W)

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 98. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

99. *Prudential's December 20, 2023 letter stated "If you believe this information is not correct, please contact Prudential as soon as possible using the contact information listed above." (Glaser Dec. ¶ 4; Glaser Dec., Ex. B at SCJ-SEV0002482; Decot Dec., Ex. A (Severson Dep.) at 123:22-124:3; Decot Dec., Ex. W)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 99. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

*100. Severson did not contact Prudential regarding any of the denials set forth in Prudential's December 20, 2023 letter. (Decot Dec., Ex. A (Severson Dep.) at 124:4-124:8)*

**No dispute that Prudential drafted a letter addressed to Severson containing the information. Dispute that Severson received or read the letter. (Dkt. # 25-1 at 112:6-8, 113:19-20, 117:4-6, 119:22-24, 122:22-24, 170:25-171:2; Severson Dec., ¶ 24-26).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 100. Severson's inability to recall whether he received the letter is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *See Glover v. Sitel Corp.*, No. 9-cvv-597, 2010 WL 2429714, at *1 (W.D. Wis. June 11, 2010) (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002)) ("As the Court of Appeals for the Seventh Circuit has explained, a statement that a witness does not remember a fact is not enough to put a fact into dispute at summary judgment.")

*101. Severson admitted that if the twenty dates on which he was absent beginning on August 28, 2023 and running through December 12, 2023 were not covered by the FMLA, he would receive two points per day of absence, for a total of 40 points, which is well*

*over the 16 points at which he would have been subject to termination under the SCJ's Attendance Guidelines. (Decot Dec., Ex. A (Severson Dep.) at 124:9-124:25)*

**No dispute.**

**REPLY**: Undisputed.

**Termination of Severson's Employment**

*102. In addition to the dates listed in Prudential's December 20, 2023 letter, Severson was absent from work on December 12, 13, and 19, 2023 and on January 2, 8, and 9, 2024. (White-Hill Dec. ¶ 60; Corrigan Dec. ¶ 7; Corrigan Dec., Ex B)*

**No dispute. Dispute that these dates were unexcused absences, since they were eligible for FMLA protection and Severson properly reported them as such. (Dkt. # 25-25 at 33:9-34:7; Stewart Dec., Ex. B (Bliss Dep. Ex. 9).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 102. With respect to the additional factual statements added by Plaintiff, see ¶¶ 85-95 above, see also, Def. Fact Resp. ¶¶ 12, 13, 32.

*103. On January 10, 2024, Bliss prepared a Termination Executive Summary for Severson which indicated that Severson had incurred various unexcused absences while on a DML, had provided differing reasons for his absences on certain dates, and had repeatedly failed to comply with the Company's absence notification procedures in violation of SCJ's policies. (Decot Dec., Ex. Y (Bliss Dep.) at 58:17-59:17)*

**No dispute as to the content of the Termination Executive Summary. Dispute any implied claim regarding the veracity of the Summary's content, as none of the cited materials establish as much.**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 103.

*104. On January 16, 2024, SCJ terminated Severson's employment due to excessive absenteeism while on a DML in violation of the Company's Work Rules, the Waxdale Attendance Guidelines, and SCJ's Family and Medical Leave Act policy. (White-Hill Dec. 63; Decot Dec., Ex. A (Severson Dep.) at 128:9-131:3; Decot Dec., Ex. X; Decot Dec., Ex. Y (Bliss Dep.) at 52:11-23)*

**Dispute that Severson actually exhibited excessive unexcused absences. (Dkt. # 25-25 at 33:9-34:7; Stewart Dec., Ex. B (Bliss Dep. Ex. 9). Dispute that SCJ's termination letter specified excessive absenteeism as the sole or predominant reason for Severson's termination. (Dkt. # 25-24). Affirmatively state that the termination letter listed three (3) reasons for termination without any differentiation regarding the relative importance of each of the reasons. (*Id.*).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 104. The fact that the termination letter listed additional independent reasons for Plaintiff's termination does not refute that Plaintiff was terminated for excessive absenteeism.

*105. In addition, SCJ's termination letter to Severson indicated that Severson had also failed to follow the Company's leave reporting procedures by not timely reporting his absences and also provided dishonest information regarding his leave by changing the reason for the need for time off several months later, which were additional supporting reasons for the termination. (White-Hill Dec. ¶ 64; Decot Dec., Ex. A (Severson Dep.) at 128:9-131:3; Decot Dec., Ex. X; Decot Dec., Ex. Y (Bliss Dep.) at 53:8-56:12)*

**Dispute that the termination letter categorized the reasons discussed above as "additional supporting reasons for termination." (Dkt. # 25-24). Affirmatively state that the termination letter listed three (3) reasons for termination without any differentiation regarding the relative importance of each of the reasons. (Dkt. #25-24).**

**REPLY**:  Undisputed.  Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 105.  The cited deposition testimony from Monica Bliss characterized Plaintiff's accrual of additional attendance points after the DML was delivered as the "primary" reason for Plaintiff's termination and she testified that the other reasons were "additional reasons that were included in the termination."

*106.  SCJ has terminated numerous other Waxdale employees who have not requested FMLA leave and who have accumulated 16 or more attendance points in violation of the Company's Work Rules and Waxdale Attendance Guidelines.  (White-Hill Dec. ¶ 65)*

**No dispute.**

**REPLY**:  Undisputed.

### SEVERSON'S COMMENTS REGARDING SCJ'S MOTIVATION

*107.  Severson identified Bruce "Rio" Burton, Monica Bliss, and Tim Corrigan as the three people who allegedly retaliated against him.  (Decot Dec., Ex. A (Severson Dep.) at 144:16-146:17)*

**No dispute.**

**REPLY**:  Undisputed.

*108.  With regard to their alleged retaliatory motive, Severson testified that, in approximately late September or early October 2023, SCJ held a town hall meeting to discuss all of the ways that employees could communicate and report issues within the Waxdale plant and*

*Severson stood up during the town meeting and pointed said that he could not communicate in the ways mentioned because none of his computers worked. (Decot Dec., Ex. A (Severson Dep.) at 131:4-18, 132:13-24)*

**Dispute that the information contained above was the only basis for Severson's belief of retaliatory motivations. (Dkt. # 25-1 at 131:21-25, 132:1-4, 173:19-174:15). Otherwise, no dispute.**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 86.

*109. Severson claims that, after the town hall meeting, things were "very negative" and he believed Mr. Burton and Ms. Bliss were trying to get rid of him before Mr. Burton's retirement; however, Severson indicated that no one ever said anything to Severson that suggested that they were collaborating against him; rather, it was just a feeling that Severson had about what was happening. (Decot Dec., Ex. A (Severson Dep.) at 131:4-132:7, 144:16-146:7, 173:13-175:9)*

**Dispute that Severson's belief that Burton and Bliss were trying to get rid of him was based solely on a "feeling." Affirmatively state that Severson's belief was based on a material change in the way he was treated by Burton, including Burton's assignment of Severson to less desirable job duties and a change in Burton's demeanor. (Dkt. # 25-1 at 174:6-175:9).**

**REPLY**: Undisputed. Plaintiff's response and cited evidence does not dispute in any way the factual statement set forth in paragraph 109.

Dated: March 13, 2026.

/s/ Carmen N. Decot
Carmen N. Decot, WI Bar # 1054862
John R. FitzGerald, WI Bar # 1120150
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone:  414-297-5568 (CND)
Telephone:  414-297-5079 (JRF)
Facsimile:  414-297-4900
Email:  cdecot@foley.com
Email:  jfitzgerald@foley.com

*Attorneys for Defendant S.C. Johnson & Son, Inc.*

47