**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

RODNEY SEVERSON,

     **Plaintiff,**

   v.         **Case No. 24-CV-1063**

S.C. JOHNSON & SON, INC.,

     **Defendant.**

## DECISION AND ORDER

### 1. Procedural History

Plaintiff Rodney Severson brings this action against defendant S.C. Johnson & Son, Inc. (S.C. Johnson) alleging that S.C. Johnson interfered with his rights under the Family and Medical Leave Act (FMLA) and retaliated against him by terminating his employment for exercising those rights. (ECF No. 1.) S.C. Johnson filed a motion for summary judgment to dismiss Severson's claims. (ECF No. 24.) All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 5, 11.) The court has jurisdiction under 28 U.S.C. § 1331. S.C. Johnson's motion for summary judgment is fully briefed and ready for resolution.

## 2. Facts

The following facts are taken from Severson's response to S.C. Johnson's proposed findings of fact (ECF No. 37) and S.C. Johnson's response to Severson's proposed findings of fact (ECF No. 44). The Court will not consider S.C. Johnson's reply to Severson's response to its proposed findings of fact (ECF No. 45) as the local rules do not permit such a reply. *See* Civ. L. R. 56(b)(3).

S.C. Johnson manufactures and packages consumer-branded products, many of which are produced at its Waxdale facility in Sturtevant, Wisconsin. (ECF No. 37, ¶ 6.) Severson was hired as a production employee at the Waxdale Facility in 2005 and worked there until his termination in 2024. (*Id.*, ¶¶ 37, 104.)

During Severson's employment S.C. Johnson maintained an attendance policy that assigned attendance points for unexcused absences, late arrivals, early departures, or violations of call-in procedures. (ECF No. 37, ¶ 15.) To avoid receiving attendance points, employees were required to notify both the Waxdale Medical Center and their supervisor or manager at least 30 minutes before their scheduled start time if they would be absent from or late to work. (*Id.*, ¶¶ 10–11.) Employees also had to provide information about their absence or late arrival, including the reason for leave, estimated duration, and a callback number. (*Id.*, ¶ 12.) Absences reported and approved as FMLA leave were excused and did not count toward an employee's attendance points. (*Id.*, ¶ 14.)

2

Under the attendance policy, employees received one point for failing to call at least 30 minutes before their shift, two points for an unexcused absence, and six points for both failing to call in and failing to report to work. (ECF No. 37, ¶¶ 16–19.) Accumulating 14 points in a year resulted in a Decision-Making Leave (DML), which included a one-day unpaid suspension. (ECF No. 37, ¶ 23.) Employees who accrued 16 points in a year were subject to termination. (*Id.*, ¶ 24.)

On February 6, 2023, Severson notified S.C. Johnson's Leave Team that he needed FMLA leave to care for a parent. (ECF No. 37, ¶ 48.) In response, S.C. Johnson provided Severson with an FMLA Family Packet, which included a blank Certification of Health Care Provider for Family Member's Serious Health Condition form. (*Id.*, ¶ 51.) Severson was required to have the form completed by a healthcare provider and returned by March 13, 2023. (*Id.*) The FMLA Family Packet included a cover letter stating, among other things, that:

- For chronic or intermittent conditions, an employee must submit the initial Certification of Health Care Provider for Family Member's Serious Health Condition form within 30 days of the first day of absence and then submit a new form every 6 months if the condition persists;

- During leave, the employee needed to continue to follow the normal reporting requirements to report his absences, including calling in to report an absence prior to the beginning of a shift;

- FMLA leave for family members needed to be reported to the employee's manager and not the Medical Center; and

3

- The employee was required to notify the Leave Team of the time missed within five calendar days of return from the FMLA usage and, if he did not provide timely notification and did not reference the specific FMLA condition for which he was absent, he would not be eligible for protection under the FMLA.

(ECF No. 37, ¶ 52.)

On March 12, 2023, Severson returned a completed Certification of Health Care Provider for Family Member's Serious Health Condition form for his mother, who had ovarian cancer. (ECF No. 37, ¶¶ 54–55.) The form stated that her condition began on February 3, 2023, and that she would require intermittent care starting March 2, 2023, for an undetermined period. (*Id.*, ¶ 56.) S.C. Johnson approved Severson for intermittent FMLA leave to care for his mother for a six-month period, from February 9, 2023, through August 9, 2023. (*Id.*, ¶ 57.) Severson disputes that S.C. Johnson provided him with notice that the leave was only approved through August 9, 2023. (*Id.*; ECF No. 25-1 at 64:16–18.)

In or about March 2023 Severson also requested intermittent FMLA leave for his own migraine flare-ups. (ECF No. 37, ¶ 58.)

Severson was absent from work on February 24 and 27 and on March 8, 10, and 20, 2023. (*Id.*, ¶ 59.) On March 23, 2023, Waxdale's Associate Manager and Field HR person, Monica Bliss, emailed Severson to ask whether any of these absences were FMLA-related. (*Id.*) Severson replied a week later, stating the absences were due to his migraines. (*Id.*, ¶ 60.) On April 19, 2023, Severson submitted a Certification of Health Care Provider

for Employee's Serious Health Condition form, and S.C. Johnson approved his absences from March 8, 2023, to April 4, 2023, as intermittent FMLA leave for migraines. (*Id.*, ¶ 61.)

Severson was absent from work on April 7, 10, 11 and 17 and May 16, 17, and 18, 2023. (ECF No. 37, ¶ 63.) On May 24, 2023, Bliss emailed Severson to ask whether these absences were FMLA-related. (*Id.*, ¶ 64.) Bliss instructed Severson to report as soon as possible any dates he believed were FMLA-related to S.C. Johnson's Leave Team. (*Id.*) About two weeks later, Severson replied and stated that his absences on May 16, 17, and 18, 2023, were related to FMLA leave to care for his parent. (*Id.*, ¶ 66.)

On July 1, 2023, S.C. Johnson transitioned its FMLA claim management to a third-party administrator, The Prudential Insurance Company (Prudential). (ECF No. 37, ¶ 67; ECF No. 28-1 at 2.) On July 12, 2023, Severson emailed S.C. Johnson's Leave Team to inform them that his absences on July 5, 6, 10, and 11, 2023, were for FMLA leave to care for his mother. (ECF No. 25-15.) The next day, the Leave Team informed Severson that, as of July 1, 2023, FMLA claims were being handled by Prudential and instructed him to request FMLA leave through Prudential's website or by phone. (*Id.*)

From July through October 2023 Severson was periodically absent from work but did not report his absences to Prudential. (ECF No. 37, ¶¶ 70–71.) He claims he tried to report these absences as FMLA leave but encountered significant difficulties contacting Prudential. (ECF No. 25-1 at 77:4–78:25.) Severson testified that he called Prudential several times but the phone line often left him on hold or disconnected the call. (*Id.* at

5

77:4–12.) He further testified that, during the first six months after the transition, it was "almost impossible to get ahold of anybody," and that if callers were still on hold at 5 p.m. "they just hung up on everybody." (*Id*. at 78:8–21.) Severson also attempted to use Prudential's website and automated service but found those methods ineffective as well. (*Id*. at 100:7–12.)

Severson testified that, during the transition to Prudential, his supervisor, Timothy Corrigan, assured him that as long as his FMLA paperwork was completed correctly he would not be penalized if Prudential's system failed to work properly. (ECF No. 25-1 at 90:22–91:7.) Throughout 2023 Severson texted Corrigan to report his absences and to explain the reasons for them. (ECF No. 44, ¶ 14.)

In early October 2023 S.C. Johnson held a town hall meeting with Waxdale employees. (ECF No. 44, ¶ 16.) While the parties dispute what was discussed at the town hall meeting, Severson testified that, when the presenters listed the ways in which employees could contact people and report things, he stood up and said, "I can't do any of that. None of my computers work." (ECF No. 25-1 at 131:12–19.) The next day Severson's manager, Bruce Burton, asked him why he spoke up at the town hall meeting, to which Severson replied, "You don't listen to me." (*Id*. at 131:21–25.) The following day, Corrigan held a private meeting with Severson and asked, "Was it worth it?" in reference to Severson's comments at the town hall meeting. (*Id*. at 132:1–5; ECF No. 44, ¶ 21.)

Severson described his relationship with Burton thereafter as very negative. (ECF No. 25-1 at 132:6–7.)

Severson explained that he spoke up at the town hall meeting because Waxdale's computers were "ancient and outdated," preventing him from accessing his email. (ECF No. 25-1 at 133:3–6.) He testified that, even if he received an email, it was nearly impossible for him to see it because the computers rarely worked. (*Id*. at 133:12–15.) Severson further stated that, after his comments at the town hall meeting and after showing Burton the computers did not work, his team received new computers. (*Id*. at 133:21–24.)

On October 12, 2023, Corrigan met with Severson and issued a Decision-Making Leave (DML) due to Severson accruing 54 attendance points. (ECF No. 37, ¶ 73.) The DML highlighted unexcused absences that Severson had not reported to Prudential as FMLA leave and advised him to report any absences he believed were FMLA-related to Prudential for possible approval. (*Id*., ¶ 74.) The DML also included a one-day unpaid suspension. (ECF No. 25-16.)

When Corrigan gave Severson the DML, Severson explained that the absences listed were FMLA-related, either due to his migraines or to care for his mother. (ECF No. 44, ¶ 55.) Corrigan responded that S.C. Johnson did not have FMLA documentation on file for Severson's mother. (*Id*., ¶ 56.) Severson told Corrigan that was incorrect

because S.C. Johnson had already approved his request for FMLA leave to care for his mother. (*Id*., ¶ 57.)

The same day Severson received the DML he called Prudential to report all the listed absences as FMLA leave to care for his mother. (ECF No. 37, ¶ 76.) After the call, Prudential sent Severson a follow-up email summarizing the reported dates and gave him instructions on how to check the status of his request or report additional time off. (*Id*.) Severson then informed Corrigan that he was working on gathering paperwork Prudential needed to review his FMLA requests for absences from February 2023 to August 2023. (ECF No. 44, ¶ 60.) He also mentioned he was working on a new FMLA certification for the absences after August 2023. (ECF No. 37, ¶ 77.) Severson asked Corrigan if his one-day unpaid suspension could be postponed while he worked on getting the paperwork to Prudential, but Corrigan told him it would be easier to serve the suspension. (ECF No. 44, ¶ 58.)

After Severson reported the absences from his DML to Prudential, Corrigan forwarded to Bliss Prudential's email, which listed the dates Severson had marked as FMLA-related. (ECF No. 25-29.) In response, Bliss pointed out to Corrigan that Severson had initially reported some absences in February and April 2023 to S.C. Johnson's Medical Center as being for a personal illness but was now reporting them to Prudential as FMLA leave to care for his mother. (*Id*.)

On October 17, 2023, Prudential mailed Severson a letter instructing him to provide a completed Care of a Family Member Medical Certification form by November 16, 2023, and warning him that failure to do so could result in a delay or denial of his request. (ECF No. 37, ¶ 83.) Severson testified that, although Prudential sent this letter to the correct address, he does not recall receiving it. (ECF No. 25-1 at 111:25–112:9.)

Severson testified that about a week after receiving the DML he met with a human resources representative from S.C. Johnson to discuss his difficulties getting FMLA approval for his absences. (ECF No. 25-1 at 97:17–98:11.) Severson stated that the representative checked when S.C. Johnson began approving his FMLA leave for his mother and assured Severson that she would handle it, telling him not to worry. (*Id*. at 98:19–25.) He also testified that during their conversation Bliss entered the room, whispered something to the representative, and left. (*Id*. at 99:3–6.) About a minute later, the representative told Severson, "You're covered. Don't worry about it. We'll take care of everything," after which Severson left and stopped worrying about the problem. (*Id*. at 99:6–13.)

S.C. Johnson disputes this account because Severson cannot identify the representative he claims to have spoken with. (ECF No. 44, ¶¶ 62–66.) Further, it says that none of the HR personnel who were available for Severson to speak to in October or November 2023 ever told Severson that he did not have anything to worry about with respect to his FMLA leave. (*Id*., ¶ 62.)

On November 3, 2023, Prudential received a Certification of Health Care Provider for Family Member's Serious Health Condition form related to Severson's father. (ECF No. 37, ¶ 84.) However, the certification did not include dates in the intermittent leave section or a description of the medical facts supporting the need for leave. (*Id.*, ¶ 85.) Severson claims he inadvertently wrote his father's name on the certification instead of his mother's name due to similarities in their conditions. (ECF No. 44, ¶ 13.) On November 7, 2023, Prudential mailed Severson a letter explaining in what way the certification was incomplete and instructing him to return a completed form by November 23, 2023, or risk denial of his FMLA request. (ECF No. 37, ¶¶ 86–88.) Severson testified that the letter was sent to the correct address and that, while he has no reason to doubt its delivery, he does not recall it. (ECF No. 25-1 at 113:13–23.)

On December 5, 2023, Prudential sent Severson another letter, again stating that his certification was incomplete, explaining the deficiencies, and directing him to return a completed certification by December 13, 2023, or his FMLA request could be denied. (ECF No. 37, ¶¶ 89–90.) The letter also requested an FMLA certification for Severson's mother. (*Id.*, ¶ 91.) Again Severson testified that the letter was sent to the correct address and that, while he may have received it, he does not recall it. (ECF No. 25-1 at 117:2–8.)

On December 20, 2023, Prudential mailed Severson a letter approving his absences from February 2023 to August 8, 2023, as FMLA leave. (ECF No. 37, ¶ 96.) The letter also listed 20 dates from August 28, 2023, to December 12, 2023, that were denied FMLA

coverage due to insufficient medical support. (*Id.*, ¶ 97.) Prudential denied Severson's absences after August 8, 2023, because his FMLA certification to care for his mother was valid only from February 8, 2023, to August 8, 2023, and was never recertified. (*Id.*, ¶ 98.) Once again Severson testified that the letter was sent to the correct address and that, although he may have received it, he does not recall it. (ECF No. 25-1 at 122:14–123:2.)

On January 10, 2024, Bliss drafted an executive summary recommending Severson's termination due to his unexcused absences, discrepancies in reporting, and failure to promptly report his absences. (ECF No. 44, ¶ 73.) On January 16, 2024, S.C. Johnson sent Severson a letter terminating his employment for "excessive absenteeism, providing false, dishonest, or misleading information in connection with a request for leave, and failure to follow the notification procedure for leave time." (ECF No. 25-24.) Bliss and Burton called Severson to inform him of his termination, and he received the termination letter about a week later. (ECF No. 25-1 at 128:9–130:11.)

### 3. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identify" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To establish a genuine issue of fact, the

nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322–23)).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## 4. Analysis

### 4.1. Severson's FMLA Interference Claim

"The FMLA provides that an employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under' the Act." *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022) (citing 29 U.S.C. § 2615(a)(1)). To establish an FMLA interference claim, an employee must show that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *See Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 993 (7th Cir. 2010) (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th

Cir. 2006)).

The first four elements of an FMLA interference claim are not in dispute here. The only issue is whether Severson can show that S.C. Johnson interfered with, restrained, or denied any FMLA benefits to which he was entitled. (ECF No. 29 at 5.)

S.C. Johnson argues that Severson cannot establish he was denied any FMLA benefits because he received leave for all dates for which he provided complete FMLA certification. (ECF No. 29 at 5–6.) According to S.C. Johnson, Severson was approved only for intermittent FMLA leave from February 9, 2023, to August 9, 2023, to care for his mother, and from March 8, 2023, to April 4, 2023, for his migraines. (*Id*.) S.C. Johnson states that Prudential advised Severson on October 17, 2023, that the failure to provide FMLA certification for his ongoing absences could result in denial of leave requests. (*Id*. at 8.) S.C. Johnson further contends that, once Prudential received Severson's FMLA certification for his father, it notified him that the certification was incomplete and requested new FMLA certification if Severson wished to take FMLA leave to care for his mother. (*Id*. at 12; ECF No. 48 at 6.)

Severson does not dispute his periodic absences from work after August 9, 2023, but argues that Prudential did not provide actual notice that the FMLA certification he provided on November 3, 2023, was incomplete. (ECF No. 35 at 8.) He asserts that he does not recall receiving the letters Prudential claims to have sent regarding issues with his certification, although he concedes that the address to which the letters were sent is his

13

correct address. (*Id*. at 10; ECF No. 25-1 at 111:25–112:5, 113:13–16, 119:12–16, 122:14–21.)

Severson further contends that no one at S.C. Johnson informed him of the deficiencies in

his certification. (ECF No. 35 at 11.) Based on these facts, Severson argues a jury could

find that he never received proper notice from Prudential and that this interfered with

his FMLA rights. (*Id*. at 14.)

"The FMLA provides that an employer may require that FMLA leave requests 'be

supported by a certification issued by the health care provider' of the employee." *Kempf*

*v. Ill. Dep't of Human Servs.*, 618 F. Supp. 3d 804, 809 (C.D. Ill. 2022) (citing 29 U.S.C.

§ 2613(a)). Employers can require employees taking FMLA leave to "obtain subsequent

recertifications on a reasonable basis." 29 U.S.C. § 2613(e). However, each time

certification is required, the employer must notify the employee. 29 U.S.C. § 825.305(a).

The notice for an initial certification must be in writing, but if a recertification is requested

within twelve months of the original certification, the notice may be given orally. *Id*.

When an employer requests a medical certification, the employee must provide a

"complete and sufficient" certification. 29 C.F.R. § 825.305(c). "If the employer believes

the certification is incomplete or insufficient, it is obligated to inform the employee and

'state in writing what additional information is necessary to make the certificate complete

and sufficient.'" *Davis v. Ill. Dep't Hum. Servs.*, 137 F.4th 641, 644 (7th Cir. 2025) (citing

§ 825.305(c)). An employer must provide an employee with seven calendar days to

complete the certification, and if the employee does not do so the employer may deny the

leave request. 29 C.F.R. § 825.305(c).

In its November 7, 2023, letter to Severson, Prudential explained which parts of Severson's certification were incomplete and warned that his request could be denied if he did not submit a completed certification within 15 days. (ECF No. 25-20.) A second letter, sent on December 5, 2023, similarly identified the missing information and advised Severson that he had seven days to provide a completed certification or his requests could be denied. (ECF No. 25-21.) The third letter, dated December 19, 2023, again told Severson to provide a completed certification but did not specify what information was missing. (ECF No. 25-22.)

Once Severson submitted an incomplete certification, S.C. Johnson/Prudential was required to notify him of the deficiencies and give him a reasonable opportunity to correct them. *See Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 768 (7th Cir. 2008) (citing 29 C.F.R. § 825.305(c)). Prudential's letters to Severson on November 7, 2023, and December 5, 2023, satisfied these requirements by explaining what was missing from his certification and providing him with time to address the deficiencies. (ECF No. 25-20; ECF No. 25-21.) Severson's testimony that he does not remember receiving Prudential's letters despite acknowledging the accuracy of the address to which they were sent is insufficient to create a genuine issue of material fact regarding whether S.C. Johnson gave him notice about the deficiencies with his certification. *See Glover v. Sitel Corp.*, No. 9-CVV-597, 2010 WL 2429714, at *1, 2010 U.S. Dist. LEXIS 57787, at *3 (W.D. Wis. June 11, 2010) (explaining

15

that "a statement that a witness does not remember a fact is not enough to put that fact into dispute at summary judgment") (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2022)).

Severson alternatively argues that he can establish an FMLA interference claim by showing that S.C. Johnson/Prudential discouraged him from taking FMLA leave. (ECF No. 35 at 16.) He asserts that significant problems with Prudential's system for addressing FMLA requests discouraged him from taking FMLA leave. (*Id.* at 17.) In response, S.C. Johnson contends that Severson's complaints about Prudential's system are insufficient to establish an interference claim. (ECF No. 48 at 12.)

The Seventh Circuit has held that the "actual denial of FMLA benefits" is not required to establish an FMLA interference claim. *Ziccarelli*, 35 F.4th at 1085. An employer that "implements a burdensome approval process or discourages employees from requesting FMLA leave could interfere with and restrain access without denying many requests because few requests requiring a formal decision would ever be made." *Id.* at 1086. For an interference claim, "the critical question is whether the employer's actions would discourage a reasonable employee from taking FMLA leave." *Preddie v. Bartholomew Consolidated Sch. Corp.*, 799 F.3d 806, 818 n.35 (7th Cir. 2015) (citing *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009)).

Severson described several difficulties he had communicating with Prudential about his FMLA leave. He testified that, despite calling Prudential's phone line several

times, it was "almost impossible to get ahold of anybody," and he was frequently disconnected from the call. (ECF No. 25-1 at 77:4–78:11.) He further stated that anyone still on hold at 5 P.M. would be hung up on by Prudential. (*Id*. at 78:17–22.) He testified that he was hung up on four or five times. (*Id*. at 78:23–24.) He attempted to use Prudential's website and automated service but "could not get it to work" and encountered "nothing but problems." (*Id*. at 100:9–12.) Severson explained that he was discouraged from using his FMLA leave because he believed it would not be recorded correctly, and that he would not be able to speak with anyone at Prudential. (*Id*. at 139:11–19.)

In *Tarpley v. City Colleges of Chicago*, 752 F. App'x 336 (7th Cir. 2018), the plaintiff claimed that her employer's switch to a third-party FMLA administrator caused her "debilitating stress and confusion" and interfered with her FMLA rights. *Id*. at 344. The Seventh Circuit upheld the dismissal of the plaintiff's FMLA interference claim, explaining that she had not provided evidence showing how the change actually interfered with or restrained her rights under the FMLA. *Id.* at 346.

Unlike the plaintiff in *Tarpley*, Severson does more than simply claim that Prudential's FMLA system was confusing; he provides evidence that he made multiple attempts to contact Prudential to report or request FMLA leave but was unsuccessful due to issues with the system. He further testified that, while at work, he met with a Human Resources representative who reviewed his file and assured him that she would resolve

the issues with his FMLA leave, which left him "shocked" when he was terminated. (ECF No. 25-1 at 170:5–11.)

At the summary judgment stage, the court's role is not to assess Severson's credibility, but to determine whether a genuine issue of material fact exists for trial. *See Anderson*, 477 U.S. at 252 (explaining that at summary judgment the question is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented"). When the facts are viewed in Severson's favor, a reasonable jury could find that Prudential's system for addressing FMLA requests created a "burdensome approval process" that interfered with or discouraged Severson from taking FMLA leave. *See Ziccarelli*, 35 F.4th at 1086. Because genuine issues of material fact remain regarding whether Prudential's system discouraged Severson from taking FMLA leave, S.C. Johnson's motion for summary judgment on Severson's FMLA interference claim is denied.

### 4.2. Severson's FMLA Retaliation Claim

The FMLA prohibits employers from discharging or in any manner discriminating against any employee for opposing practices made unlawful by the FMLA. *See* 29 U.S.C. § 2615(a)(2). An FMLA retaliation claim requires an employee to show that: (1) he engaged in statutorily protected activity; (2) his employer took adverse action against him; and (3) the protected activity caused the adverse action. *Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1307 (7th Cir. 2022). An employee does not need to prove retaliation

was the only reason for his termination; he may establish a claim by showing his protected conduct was a "substantial or motivating factor in the employer's decision." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 742 (7th Cir. 2008) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)). "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Id.* (quoting *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004)).

A plaintiff may rely on either the direct or indirect method of proof to establish retaliation for exercising rights under the FMLA. *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009). Under the direct method, "a plaintiff must present evidence that h[is] employer took a materially adverse action against h[im] because of h[is] protected activity." *Goelzer*, 604 F.3d at 996. A plaintiff can survive summary judgment by "creating a triable issue of whether the adverse employment action of which []he complains had a discriminatory motivation." *Id.* (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005)).

S.C. Johnson argues that Severson cannot show a causal connection between his termination and his requests for or use of FMLA. (ECF No. 29 at 15.) In response, Severson contends that each of S.C. Johnson's reasons for terminating him are connected to his attempts at taking FMLA leave. (ECF No. 35 at 19.)

Severson's termination letter stated he was being terminated for "excessive absenteeism, providing false, dishonest, or misleading information in connection with a

request for leave, and failure to follow the notification procedure for leave time." (ECF No. 25-24.) S.C. Johnson's stated reasons for terminating Severson are related to his requests for or use of FMLA leave and, therefore, could be viewed as causally connected to his termination. *See Burnett*, 472 F.3d at 482 (denying employer's motion for summary judgment where the employee's "alleged insubordinate act was his request for FMLA leave, or at least a key component of it").

Bliss drafted Severson's termination letter and was aware that Severson had issues in the past with his FMLA leave, yet she did not speak with him or Corrigan about his absences before recommending his termination. (ECF No. 25-25 at 30:15–21, 48:3–14, 77:4–14; ECF No. 44, ¶ 74.) She indicated that Severson was being terminated for failing to report his absences on time despite knowing that he had been instructed to back-report any unexcused absences he believed were FMLA-related. (ECF No. 25-29.) Bliss also stated that Severson had been intentionally dishonest in his FMLA reporting due to discrepancies between his initially reported reasons for being absent in February and April 2023 and what he later reported to Prudential in October 2023, but she never discussed these discrepancies with Severson prior to his termination. (ECF No. 25-25 at 35:15–25.)

Given these facts and the close timing between Severson's requests for or use of FMLA leave and his termination, a reasonable jury could conclude that there is a causal connection between the two. *See Pagel v. Tin Inc.*, 695 F.3d 622, 631 (7th Cir. 2012)

(explaining that "suspicious timing", along with other evidence, may establish a causal connection in an FMLA retaliation claim).

Because Severson has provided evidence from which a trier of fact could infer unlawful retaliation, and S.C. Johnson has not presented unrebutted evidence that it would have terminated Severson absent his request for or use of his FMLA rights, S.C. Johnson's motion for summary judgment as to Severson's retaliation claim is denied. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (explaining that "the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive").

## 5. Conclusion

**IT IS THEREFORE ORDERED** that S.C. Johnson & Son, Inc.'s motion for summary judgment (ECF No. 24) is **DENIED**. The clerk of court shall schedule a status conference to discuss further proceedings.

Dated at Milwaukee, Wisconsin this 27th day of April, 2026.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge